# Richmond

ANNIE E. FOX PARKES *v.* BEN T. GUNTER AND J. ABBOTT BYRD, ADMINISTRATORS OF J. HARRY REW, DECEASED, ET ALS.

March 11, 1937.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Mapp & Mapp* and *Herbert Barnes*, for the appellant.

*Gunter & Gunter, Elmer W. Somers* and *Stewart K. Powell*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

On June 1, 1920, Joseph H. Mason and wife conveyed to J. Harry Rew, trustee, certain property known as the "Mason Farm" in Accomac county, Virginia, in trust to secure an indebtedness in the principal sum of $19,000 with interest, evidenced by four bonds of the same date and payable on demand. Three of the said bonds were for the sum of $5,000 each, one was for the sum of $4,000, and all were secured ratably, without priority one over the other.

Although the bonds were made payable to Accomack Banking Company, Inc., of which J. Merritt Chandler, one of the appellees, was the cashier, the bank, in fact, did not own any of them.

In December, 1921, the Accomack Banking Company, Inc., assigned to R. L. Parkes two of the $5,000 bonds, which, upon his death, in 1923, became the property of

his wife, Annie E. Fox Parkes, the appellant. The said Chandler and Rew had guaranteed in writing the payment of both the principal and interest of these two bonds.

It is not disputed that these bonds owned by Mrs. Parkes constitute a valid lien on the property, and that both Chandler and Rew are personally bound for the payment of them by reason of the aforesaid guaranty. Nor is there any dispute that the $4,000 bond has been paid and cancelled and is no longer a lien on the property.

The remaining $5,000 bond by mesne assignments became the property of Lemuel R. Mason, and was held and owned by him until December, 1925, when it came into the possession of J. Merritt Chandler under circumstances which will be hereinafter related. Subsequently, on May 13, 1930, this $5,000 bond, along with the $4,000 bond, was released by J. Harry Rew, as attorney for the holder thereof, by an appropriate entry on the margin of the deed book in the clerk's office.

The question here involved is whether this latter $5,000 bond has been lawfully cancelled and released, or whether it is still a valid and existing lien on the property and entitled to stand on the same footing as the two bonds held by Mrs. Parkes.

J. Harry Rew died in July, 1933, and shortly thereafter Mrs. Parkes, suing on behalf of herself and other of his creditors, instituted this suit for the settlement of his estate.

In her bill Mrs. Parkes alleged that she owned the two $5,000 bonds, that they were secured by the said deed of trust, that the remaining bonds thereby secured had been cancelled and released as shown by the marginal entry on the deed book, and that the bonds so held by her had been guaranteed in writing by the said J. Merritt Chandler and J. Harry Rew.

The prayer of the bill was that the deed of trust on the Mason farm be foreclosed and the proceeds of sale applied to the payment of the bonds held by her, that the estate of the decedent, J. Harry Rew, be settled, and that his real estate, a part of which was owned jointly by the decedent

and Chandler, be subjected to the payment of the debt due her by reason of the said guaranty. Chandler and his wife, Nora E. Chandler, were made parties defendant to the bill.

After the administrators of the decedent had filed an answer to the bill, depositions were taken before a commissioner in chancery, to whom the matter had been referred. While neither Chandler nor his wife had at that time filed an answer to the bill they were represented by counsel who participated in these hearings.

On April 25, 1935, J. Merritt Chandler and Nora E. Chandler filed their separate answers to the bill, in which it was alleged, for the first time, that in ·December, 1925, Chandler had purchased the $5,000 bond from Lemuel R. Mason, and, on the same day, had made a gift of it to his wife, Nora E. Chandler; that the release of this bond by J. Harry Rew, on May 13, 1930, was without the authority of either Chandler or his wife, and hence was ineffective, and that the bond was a valid and existing lien on the property.

Thereupon the matter was referred to the commissioner in chancery for the purpose of taking evidence on the issue thus raised by the Chandlers' answers.

After several hearings the commissioner filed a report holding that the bond claimed to be owned by Nora E. Chandler had been paid and released and was no longer a lien on the property.

This report of the commissioner the court overturned and decreed that the bond of $5,000, alleged to be owned by Mrs. Chandler, had not been lawfully released and cancelled, and was, therefore, a valid and existing lien against the property, on a parity with the bonds held by Mrs. Parkes.

From this decree adjudicating the principles of the cause the present appeal has been taken by Mrs. Parkes. Code, section 6336.

■ Code, section 6179, as written by the revisors of 1919, provides that the report of a commissioner in chancery "shall not have the weight given to the verdict of a jury

on conflicting evidence, but the court shall confirm or reject such report in whole or in part, according to the view which it entertains of the law and the evidence."

In view of this provision it becomes necessary for us to review briefly the evidence and ascertain whether it supports the holding of the commissioner in chancery or that of the trial court.

Chandler's story is this: At the insistence of Lemuel R. Mason the property was advertised for sale under the deed of trust on September 26, 1925. On the morning of the sale Rew came to him (Chandler) and asked the latter to bid on the property for him (Rew), stating that as he (Rew) was the trustee under the deed, he (Rew) was precluded from purchasing the property in his own name. Chandler consented to this arrangement, attended the sale, and bid the property in at $14,900. After the sale Chandler agreed, at Rew's request, to consummate the purchase of the property on a partnership basis with him. It then seemed likely that they might effect a resale of the farm in a short time at a profit and pay off the bonds.

Lemuel R. Mason was insisting that the sale be consummated and that his bond be paid. Chandler put him off from time to time until finally on December 13 or 14, 1925, he paid Mason the sum of $4,973 and got possession of the bond. Chandler required Mason to execute a writing on a separate piece of paper whereby the bond was assigned to him, Chandler. Chandler claims that on the same day, and just beneath the above assignment, he (Chandler) executed an assignment of the bond to his wife, Nora E. Chandler, and immediately delivered the bond to her. Neither of such assignments was introduced in evidence, but Chandler's claim is that Rew destroyed them at the time the bond was released as hereinafter stated.

Chandler further said that he made this payment to Mason at Rew's suggestion and upon the assurance that the latter would reimburse him for one-half thereof. This promise Rew failed to keep.

Although the sale of the property was not consummated,

and Chandler neither paid the purchase price nor received a deed for the property, Rew, as trustee, filed with the commissioner of accounts a statement showing the collection by him of the purchase price in full, and the distribution of the proceeds of sale, including the payment to Lemuel R. Mason of the sum of $4,973.*18*. The account further showed that the balance of the net proceeds of the sale had been paid to the Accomack Banking Company, Inc., (of which Chandler was the cashier) as the holder of the two remaining bonds. These last named bonds, as we have seen, were at that time owned and held by Mrs. Parkes.

On January 1, 1926, Chandler and Rew took possession of the Mason farm and remained in charge of it until Rew died in July, 1933. They collected the rents, paid the taxes, paid the interest due from time to time to Mrs. Parkes, but paid no interest whatsoever to Mrs. Chandler as the holder of the remaining bond. The net profit derived from the operation of the farm was divided equally between Chandler and Rew.

Chandler further testified that in May, 1930, Rew came to him and asked for the original $5,000 bond which he (Chandler) had acquired from Mason. Rew stated that he desired to "show" this bond to G. Walter Mapp, Esq., the attorney for Mrs. Parkes. Chandler said that he gave the bond to Rew, who returned it to him on the same day in an envelope; that he (Chandler), without opening the envelope or examining the bond, returned it to his wife; and that not until shortly before the commencement of this litigation in 1933 did either he (Chandler) or Mrs. Chandler know that the bond had been marked paid and released in the clerk's office, and that the assignments from Mason to him and from him to Mrs. Chandler were missing.

The testimony of Chandler as to his gift of the bond to his wife and the circumstances under which it had been delivered to Rew and returned by the latter was corroborated by that of Mrs. Chandler. The testimony of Mrs. Parkes is that she knew nothing of the foreclosure sale in 1925; that the interest on the bonds had been paid to her by either

Rew or Chandler, or by both, until 1930. But she said Rew and Chandler were frequently late in making their payments and she was constantly after them, particularly Chandler. She was uneasy about the value of the security, but was assured by Chandler on numerous occasions that her money was perfectly safe and that the bonds held by her were the only lien on the property. She was corroborated by her son as to Chandler's admissions and statements to her.

In the early part of May, 1930, Mrs. Parkes consulted G. Walter Mapp, Esq., her attorney, about the matter and he took up with Rew and Chandler the matter of renewing the written guaranty on the bonds, which was about to expire. Mr. Mapp's transactions were largely with Rew, who was likewise an attorney. He told Rew that Mrs. Parkes would insist upon a foreclosure of the deed of trust unless the guaranty was renewed and unless the two bonds of $4,000 and $5,000 (the latter of which had been held by Lemuel R. Mason) were released on the record. Consequently on May 13, 1930, Rew executed in the clerk's office the marginal release of these bonds. A few days later, on May 22, Rew and Chandler executed a new writing, under seal, guaranteeing to Mrs. Parkes the payment of the principal and interest of the two bonds held by her.

And so the matter stood until the death of Rew in July, 1933, and the commencement of the present litigation in November of the same year.

In substance the claim of Chandler and his wife is that Rew perpetrated a gross fraud on them, in that he obtained possession of the bond under the pretense of showing it to Mr. Mapp, and that before returning it to them he (Rew) released the bond in the clerk's office.

After a careful review of the evidence in the light of the surrounding circumstances, we are unable to agree with the trial court that Rew was guilty of this fraud charged to him and against which he can not now defend himself.

We think the following circumstances conclusively discredit the claim of the Chandlers and support that of Mrs. Parkes:

(1) When Chandler acquired the bond from Mason he did so for the joint benefit of Rew and himself. He testified that he expected Rew to reimburse him for one-half of what he paid Mason. This is true whether the bond was paid or purchased. Therefore, Chandler had no right to make a gift of the bond to his wife. This is recognized by the language of the decree appealed from, which says: "Without at this time determining to whom the bond of $5,000, * * * belongs, whether to J. Merritt Chandler, or to his wife, Nora E. Chandler, but being of the opinion that the said bond is a lien against the said Joseph H. Mason Farm," etc.

(2) During the period of seven years when, as Mrs. Chandler claims, she owned the bond, she never collected any interest thereon or made any demand therefor. In the meanwhile interest was paid on the Parkes bonds. Even Rew did not know that Mrs. Chandler claimed that this bond was her property.

(3) The record itself shows the release of this bond by Rew, one of the two parties for whose benefit it had either been paid or purchased.

(4) The release of the bond is entirely consistent with the testimony of Mapp that he was insisting that the status of the Parkes bonds be cleared up and was almost simultaneous with the renewal of the written guaranty by Rew and Chandler.

(5) Chandler knew of Mapp's negotiations with Rew. He knew that Mapp had insisted upon a production of this bond. Rew told him so. Chandler was no inexperienced man. He was then cashier of a bank. He knew that if Mapp was interested in strengthening Mrs. Parkes' record title to her security he (Mapp) would not be satisfied by merely inspecting the bond unless it carried the clerk's notation showing that it had been cancelled and released.

(6) There is no reason why Rew should not have disclosed to Chandler his entire negotiations with Mapp, and the fact that the latter was demanding a release of the bond as well as a renewal of the guaranty.

(7) No reason is given or suggested why Rew should have perpetrated a fraud on Chandler and should have released this bond without the consent and authority of the latter. The release was of no more advantage to Rew than it was to Chandler. They were both equally bound on the guaranty to Mrs. Parkes and both desired to satisfy her and her attorney.

(8) It is incredible that if Chandler and his wife had considered this $5,000 bond a valid and existing lien on the property, they would have allowed it to get out of their possession without knowing or inquiring the reason therefor, or that when Rew returned an envelope, which he said contained the bond, neither Chandler nor his wife took the trouble to examine the bond, or, in fact, even to ascertain whether it was actually in the envelope, until more than three years thereafter.

(9) Although Chandler and his wife admitted that they knew in September, 1933, that this bond had been cancelled and released and although Mrs. Parkes charged in her bill, filed in November, 1933, to which Chandler and his wife were made parties defendant, that her (Mrs. Parkes') bonds were the only lien on the property, and that the bond now claimed by Mrs. Chandler had been released and cancelled of record, Chandler and his wife did not dispute these allegations until the filing of their answers on April 25, 1935.

Therefore, when we consider these circumstances, along with the positive testimony of Mrs. Parkes and Mr. Mapp, we are forced to the conclusion that, subject to Chandler's claim against Rew for reimbursement for one-half of the amount paid Mason, both Chandler and Rew considered either that the bond had been paid or was owned jointly by them; and that it was released by Rew at the insistence of Mrs. Parkes' attorney, with the knowledge and consent of Chandler, and hence is no longer a valid lien on the property.

The decree is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*