# Richmond

ALICE HENDERSON, ET AL V. DAISY HENDERSON, ET AL.

March 13, 1950.

Record No. 3587.

Present, All the Justices.

The opinion states the case.

*T. E. Brannock* and *H. P. Burnett*, for the appellants.

*S. Floyd Landreth* and *Stuart B. Campbell*, for the appellees.

SPRATLEY, J., delivered the opinion of the court.

T. L. Henderson and C. A. Henderson, brothers, lived in Grayson county, Virginia, where for many years they were engaged as partners in the purchase of land, in farming operations, and other business enterprises, until the death of C. A. Henderson in June, 1945. In August of 1945, T. L. Henderson instituted this proceeding against Daisy Henderson, the widow of C. A. Henderson, and his heirs-at-law and administrator for the purpose of obtaining an accounting and settlement of the partnership accounts, and transactions between him and his deceased brother, and for a partition of the lands of the partnership in accordance with an agreement made in 1935. The complainant alleged that there was due to him the sum of $2,468. The defendants filed an answer and cross-bill. In their answer they denied any indebtedness to T. L. Henderson, and in their cross-bill alleged that the latter was indebted to the estate of their intestate in the sum of $458.07. They joined in the prayer for a partition of the lands jointly owned. The complainant answered the cross-bill, denying any indebtedness to his brother's estate.

The cause was referred to a special commissioner, Jack M. Matthews, for an accounting between the parties and a report thereof to the court.

The testimony of T. L. Henderson, two of his sons, Mrs. Daisy Henderson, three of her sons and Miss Juanita Lundy was given personally before the commissioner. In addition

there were presented in evidence certain written exhibits and stipulations.

Early in the taking of the depositions before the special commissioner, all of the parties conceded that T. L. and C. A. Henderson had, in 1935, entered into an agreement, which settled and brought down to its date the status of their financial relations with their partnership and with each other. No written copy of their agreement could then be found, although a careful search had been made to locate it. However, when the depositions were almost concluded, Miss Juanita Lundy, secretary and stenographer of the late Senator Parsons since 1921, produced a written instrument, hereinafter referred to as the 1935 settlement, signed and sealed by both T. L. and C. A. Henderson on February 18, 1935. Miss Lundy said that after numerous efforts to locate the paper, she finally found it in a drawer in the office safe of Senator Parsons, an attorney at law, "where he usually kept letters and papers people gave to him for safekeeping."

T. L. Henderson died intestate December 21, 1946, shortly after the conclusion of the hearing before the commissioner. The suit was revived in the names of Alice Henderson, widow of T. L. Henderson, and the heirs-at-law and personal representatives of T. L. Henderson, as complainants.

On consideration of the oral and documentary evidence, the 1935 settlement and the stipulations agreed upon by the parties, the commissioner reported on September 27, 1947, as follows:

"The estate of C. A. Henderson owes the estate of T. L. Henderson in connection with the Federal Land Bank debt the sum of.................$ 1,142.75

"The estate of C. A. Henderson owes the T. L. Henderson estate in connection with the 'Campbell' debt ................................. 310.90

Total ...............................$ 1,453.65

"The above amount is due the T. L. Henderson estate by the estate of C. A. Henderson together with interest from the 15th day of December, 1944 until paid."

The commissioner further reported that deeds should be executed by the parties to carry into effect the provisions of the 1935 settlement with respect to the lands involved.

The defendants excepted to do so much of the report as found the estate of C. A. Henderson indebted to the estate of T. L. Henderson. The chancellor sustained their exception, and by decree of December 9, 1948, adjudged, ordered, and decreed that the estate of C. A. Henderson recover $94.20 from the estate of T. L. Henderson. The decree further directed a conveyance of the lands in accordance with the 1935 settlement, and ordered the costs of the suit to be equally paid by the parties.

The sole assignment of error is that the trial court erred in refusing to confirm the special commissioner's report.

■ The report of a commissioner, when the evidence has been taken in his presence, while it does not have the weight given to the verdict of a jury on conflicting evidence, is entitled to respect, and should not be disturbed unless its conclusions are unsupported by the evidence. Virginia Code, 1950, section 8-250, formerly Va. Code (1942), Michie, section 6179.

Thus it becomes necessary that we review the evidence to ascertain whether it supports the holding of the commissioner or that of the trial court. *Ingram* v. *Ingram*, 130 Va. 329, 107 S. E. 653, 26 A. L. R. 1175; *Parkes* v. *Gunter*, 168 Va. 94, 98, 190 S. E. 159; *Parksley Nat. Bank* v. *Parks*, 172 Va. 169, 200 S. E. 629.

The material evidence supporting the report of the commissioner may be briefly stated as follows:

In 1914 the brothers jointly purchased a tract of land from R. J. Reedy. On May 21, 1921, they purchased another tract of 82 acres at a sale made by J. D. Perkins, special commissioner, at a price of $181 per acre, a total price of $14,842. A small cash payment was made on this purchase

and notes for the remainder were executed by the brothers, the notes being secured by a reserved vendor's lien on the land. Payments were made on these notes from time to time to the late Senator J. M. Parsons, who became their holder.

In August, 1921, the brothers borrowed $5,000 from V. E. Cornett and executed a deed of trust on their partnership lands and on other lands individually owned by them, securing a note evidencing the debt. The proceeds of this note were applied on the purchase money notes for the Reedy farm. This note, after being endorsed by V. E. Cornett and Senator J. M. Parsons, was assigned to a client or clients of Mr. S. B. Campbell, to whom all payments thereon were made, and it will be hereafter referred to as the Campbell note or loan.

On July 5, 1924, the brothers, because of financial distress, obtained a loan of $8,000 from the Federal Land Bank of Baltimore to be repaid on an amortization plan over a period of 36 years, ending in 1960. This indebtedness was evidenced by a series of notes secured by a mortgage on their partnership and individual lands. The proceeds of the loan were applied to the full satisfaction of the purchase money notes due on the 82-acre tract purchased from Perkins, special commissioner.

Sometime thereafter the brothers found themselves unable to make payments due on their obligations. They were unable to agree between themselves how much each had paid or how much each of them was to pay. They made frequent trips to consult Senator Parsons, who was their trusted friend and legal advisor. Under the guidance of the latter, who represented both of them, several partial or temporary settlements were agreed upon. A written statement found in the office of Senator Parsons in a "File of T. L. Henderson and C. A. Henderson" showed that in 1921 C. A. Henderson was in arrears in his payments in the sum of $700, on account of the purchase of the 82-acre tract. Another record kept by T. L. Henderson showed

that subsequently C. A. Henderson was in arrears in the sum of $1,068. On the back of an undated typewritten statement of the account between the parties, found in the papers of C. A. Henderson and filed as "Exhibit-Settlement of 1932," there was a pencilled notation in the handwriting of Senator Parsons as follows: "Settlement between C. A. Henderson and T. L. Henderson made November 1, 1932." This pencilled memorandum continues in the following language: "All accounts between settled and difference in interest, renewal fees, and costs of renewal of the Campbell loan and all other matters between them settled—but this doesn't release in any way the Campbell loan that all their lands stand for as shown by a trust deed, and Mr. C. A. Henderson due to T. L. Henderson $900, and this amt. when paid to go on Campbell. November 1, 1932."

T. L. Henderson appears to have been the more active in keeping a record of the financial transactions of the partnership, especially with reference to payments made by each of the partners on account of the debts.

The memoranda made by each of the brothers indicate that T. L. Henderson had continuously overpaid his part on the partnership debt, and that C. A. Henderson was a laggard in that respect.

The financial situation of the parties became so bad in 1929 and thereafter, due to the effects of a serious economic depression prevailing throughout the country, that they had become much in arrears in their payments to the Federal Land Bank. In 1935 they actually owed more to that bank than the amount of their original loan. Pressed for payment of their debts and threatened with foreclosure proceedings against their property, they filed a petition in bankruptcy, having for its object a conciliation of their debts with their creditors. In the conciliation proceedings V. E. Cornett and Senator Parsons, endorsers on the $5,000 Campbell note, agreed to pay and did pay $1,000 of their personal funds on that note to assist the brothers, thereby reducing the obligation of the brothers thereon to $3,000.

After the conclusion of the conciliation proceedings, the brothers agreed upon a division of their lands, but were unable to reconcile their respective claims for payments made by them or agree upon their respective obligations. In the agreement as to their lands, each was to take one-half of the acreage of the Reedy land, each half being considered of equal value. The 82-acre tract was divided by allotting 56 of its acres to T. L. Henderson. The remaining 26 acres were divided according to the value of the particular shares. T. L. Henderson was to take 9 acres at the price of 13 acres at $181 per acre, that is, at a value of $2,353. C. A. Henderson was allotted 17 acres at the price of 13 acres at $181 per acre, also of the value of $2,353. Because T. L. Henderson agreed to take the 56-acre portion of the tract at $181 per acre, and thereby assumed liability for a larger share of the partnership debts, C. A. Henderson agreed to pay to his brother $1,000, or to pay that sum on the partnership's indebtedness in reduction of the amount due from T. L. Henderson.

T. L. Henderson further agreed to sell and convey the old Henderson home tract, owned by him individually, to his brother for $1,600. It was understood between the parties that deeds for the respective lands were not to be executed and delivered until the debts of the parties had been satisfied and final settlement made between them.

Having thus agreed to a division of their lands, the brothers again sought the advice and counsel of their mutual friend and attorney, Senator Parsons, in the effort to effect a settlement of their partnership obligations. As a result, they reached an agreement as to the amount owing by each as of that date, and reduced their agreement to writing. None of the parties, however, was able to recall its exact provisions. Each of them gave a version according to his understanding and recollection, somewhat in conflict with its provisions.

After the above evidence had been presented, the written settlement of 1935 was found and introduced in evidence.

After its introduction, T. L. Henderson was recalled to the witness stand, and he then testified that the written agreement fully set out the settlement reached by himself and his brother. The defendants did not offer any further evidence or attempt to show why their testimony was not in keeping with the terms of that agreement.

The 1935 settlement agreement reads as follows:

"KNOW ALL MEN BY THESE PRESENTS:

"That there has been a contention between C. A. Henderson and T. L. Henderson as to the amount that C. A. Henderson has agreed to pay to T. L. Henderson in addition to the $1500.00 that he has been paying, the interest on the loan of $8000.00, due by both of them, and they have now settled the amount and it is $1400.00 due by C. A. Henderson, with interest from this date: $200.00 of said amount is this day paid and the $1200.00 is to be paid and adjusted on the Federal Land Bank mortgage and the S. B. Campbell trust deed: J. M. Parsons, Attorney, is to state to C. A. Henderson where this $1200.00, or any part, is to go, but it is understood that the $1200.00 is to go on one or the other trust deed. *The $1400 is in addition to $1500 due by C. A. Henderson on Federal Land Bank.*

"It is further understood by this written agreement this day signed between them, that C. A. Henderson and wife are to make unto T. L. Henderson a deed to all the Anderson land, that was purchased by them, except 17 acres on the West side of the Rugby Road, and the Mill Lot on the other side of the East side of the road; and, the said T. L. Henderson and wife are to make a deed to C. A. Henderson to one half of the 17 acres and the mill lot and the Old Henderson Home Tract, containing about 82 acres, more or less: and C. A. Henderson is to pay for this land, known as the Old Henderson Home Tract, $1615.00 by assuming and paying that much on the Federal Land Bank mortgage. These deeds are to be written up and signed by the parties

and their wives just as soon as settlement is reached by the Federal Land Bank of Baltimore on its debt.

"WITNESS the following signatures and seals this February 18, 1935:

"T. L. Henderson   (Seal)
"C. A. Henderson   (Seal)"

There were found three typewritten copies of this agreement. The italicized words in the above copy, signed by each of the brothers, were written in ink in the handwriting of Senator Parsons. Another copy, containing the interlineation, was not signed by either of them. A third copy, without the interlineation, was signed by both.

Sometime subsequent to 1935, the brothers began to make larger payments from time to time on their loans in order to pay off their debts, so that they could make deeds to each other for the lands agreed to be divided.

On February 18, 1935, the partnership owed $3,000 on the Campbell note, and $8,239.28 to the Federal Land Bank, a total of $11,239.28. The settlement of that date fixed the obligation of C. A. Henderson at the sum of $4,515. Since the total amount of the two debts amounted to $11,239.28, T. L. Henderson assumed the payment of the difference, amounting to $6,724.28.

Because payments on the Federal Land Bank loan were not made promptly, interest accrued until the debt was satisfied on December 15, 1944, when a final payment was made by T. L. Henderson in the sum of $1,500.

Taking into account the respective amounts due, the special commissioner ascertained that C. A. Henderson owed a percentage of the total amounting to forty percent plus and T. L. Henderson owed sixty percent minus; but actually used the basis of forty and sixty percent in figuring their obligations, thus to the advantage of C. A. Henderson.

It is agreed that C. A. Henderson paid the sum of $1,000 on the Campbell loan, when he should have paid $1,200, and that T. L. Henderson paid $1,800. Thus, T. L. Henderson paid $200 on this debt which should have been paid by

his brother, together with interest. The interest, over a period of about nine years, was calculated to amount to $110.90 on this over-payment, so that the total over-payment on this debt by T. L. Henderson was $310.90.

The total amount paid on the Federal Land Bank debt after the 1935 settlement, as shown on a statement furnished by the bank, was $10,491.87. On this debt it was agreed and stipulated that C. A. Henderson only paid the following amounts: $200 on the day of the settlement, twelve semi-annual payments of $82 each amounting to $984, six semi-annual payments of $80 amounting to $480, and on October 13, 1944, $1,500, a total of $3,164. He should have paid forty percent of the total amount, that is, $4,196.74, and T. L. Henderson the remaining $6,295.13. Deducting the payments of $3,164 made by C. A. Henderson from the amount which he should have paid leaves a sum of $1,032.74, which was paid by T. L. Henderson. To this the commissioner added interest for a period of years. Adding the sum of $310.90 to this last deficiency on the part of C. A. Henderson, plus interest thereon, we arrive at the amount which the commissioner found the estate of T. L. Henderson entitled to recover from the estate of C. A. Henderson.

We find no merit in the contentions of the defendants: (1) That the 1935 settlement is contradictory, unintelligible, and in irreconcilable conflict with the practical construction placed upon it by the parties; (2) that it was not made effective by delivery to the parties; (3) that the claim of the complainants lacked corroboration; and (4) that the finding of the commissioner was not supported by the evidence.

A consideration of the evidence and what we have already said disposes of these contentions.

It is clear that all of the parties relied on the 1935 settlement before the written copy was found. Each claimed that it brought the partnership accounts down to its date and settled all matters then in conflict between the parties. It was entered into and signed by the brothers at a time

when the memory of their transactions was much clearer than the memory of the witnesses at the time when the suit was brought, ten years later. It was prepared by their trusted friend and mutual agent, who was familiar with their land purchases and their obligations, and left with him for safekeeping. It is highly probable the brothers thought that a duplicate copy retained in the files or office safe of their attorney would insure its preservation for future reference and reliance upon its terms, a prevision justified by the subsequent circumstances. When it was produced, the defendants did not undertake to explain why they relied upon a construction contrary to its terms.

It is suggested that the interlineation in the copies of the 1935 settlement was inserted without the knowledge of C. A. Henderson, and was, therefore, not binding upon him. The interlineation in no wise affects the meaning of the agreement. Its recital was merely a reiteration of the statement in the opening sentence of the agreement that it had been found that C. A. Henderson owed to his brother $1,400, with interest, *"in addition to the $1500 that he has been paying,* (and) *the interest on the loan of* $8000, due by both of them." (Italics added). The $8,000 debt manifestly was a loan from the Federal Land Bank. Undoubtedly, the interlineation was inserted by the counsellor of the parties to make clear that which was already fairly clear, that is, that the sums of $1,500 and $1,400 were due for two separate and distinct items of debt.

Equally without merit is the claim that the $1,500 item was one and the same figure as the $1,615, mentioned later in the settlement agreement. The $1,500 was specifically referred to as a part of the debt of $8,000, due the Federal Land Bank. The $1,615, an entirely different sum, was to cover the purchase of the 82-acre tract of land individually owned by T. L. Henderson. Defendants' witnesses testified that Senator Parsons had told T. L. Henderson he would have to give up some of his individual land to take care of part of his debts, and in compliance therewith

T. L. Henderson agreed to let his brother purchase the old Henderson home tract by assuming and paying $1,615 on the Federal Land Bank loan.

The 1935 settlement sets out exactly the amount C. A. Henderson should pay on the partnership debts and to his brother; $1,500, on which he had been paying interest on account of the $8,000 loan, an additional sum of $1,400, evidently the amount in arrears in his payments since the 1932 settlement, and the further sum of $1,615 for the purchase of the old home place of 82 acres. Its contents banish speculation as to the terms and provisions of the agreement between the brothers.

The contentions of the complainants are fully corroborated by checks, receipts, exhibits of various statements between the brothers, agreed stipulations, and by the evidence of Miss Lundy. The findings of the special commissioner are amply supported by the evidence, both oral and documentary, and must, therefore, be sustained.

For the foregoing reasons we are of opinion to reverse so much of the decree of the trial court as sustained the exceptions of the defendants to the report of the commissioner. Accordingly, the proceedings are remanded to the trial court for the entry of a decree confirming the report of the special commissioner and directing that the complainants recover from the defendants the sum of $1,453.65, with interest from the 15th day of December, 1944, until paid.

*Reversed and remanded.*