# Staunton

HARRY G. LECKIE v. LYNCHBURG TRUST AND SAVINGS BANK, SOLE REMAINING EXECUTOR, ETC.

September 6, 1950.

Record No. 3678.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

'

The opinion states the case.

*Easley & Hoge*, for the appellant.

*Thomas J. Williams* and *S. Thomas Martin*, for the appellee.

MILLER, J., delivered the opinion of the court.

This suit was instituted by appellant, Harry G. Leckie, against appellee, Lynchburg Trust and Savings Bank, Executor of Herbert E. DeWitt, to secure specific performance of an oral agreement for sale of real estate.

The contract sought to be enforced and under which appellant purchased from Herbert E. DeWitt two acres of land known as the "warehouse property" lying just outside the corporate limits of the city of Lynchburg had been entered into in the year 1933 or 1935. In reliance thereon, appellant had taken possession of the premises, erected and added costly improvements upon the land, and made several payments on the purchase price. The vendor died in October, 1942, and though the agreement was not evidenced by any writing signed by him, his executor admitted that the contract had been partially performed by vendee and that its terms were sufficiently specific to justify performance on its part of decedent's undertaking to convey. However, the date of the contract, the specific sum agreed to be paid, the credits to which appellant was entitled, and the amount of accrued interest, if any, were matters in dispute. Thus, in the final analysis, the amount of unpaid purchase money, principal and interest, due by appellant is the only issue to be determined.

All testimony (and exhibits presented therewith) on behalf of both parties was taken before a notary public. The cause was then referred to a commissioner in chancery for inquiry and report. Briefly stated, the decree of reference directed that the commissioner inquire and report upon the

following matters: (a) the true terms of the contract between Herbert E. DeWitt and appellant, and (b) the total amount of payments or credits made by appellant upon the purchase price, and the balance owing by him. In compiling his report, he was authorized to consider the testimony and exhibits theretofore taken and empowered to obtain such further evidence as he might deem proper.

No additional proof was offered by either litigant and the commissioner did not "deem it necessary to take other evidence." He therefore formulated his report upon the evidence introduced before the notary public and returned the testimony and exhibits, along with his report. It was to the effect that as of October 5, 1945, appellant was indebted in the sum of $3,000, as the purchase price of the land, but was entitled to nineteen credits of $25 each, amounting to $475, thus leaving a balance owing of $2,525, upon which interest was due from October 5, 1945. Upon payment of that sum, conveyance of the real estate was to be made.

Both litigants excepted to the report. Appellee asserted that though subject to nineteen credits of $25 each made on specified dates between November 1, 1933, and June 5, 1935, the purchase price of $3,000 should bear interest from October 1, 1933. This would leave a principal balance of $2,815.28 owing as of June 5, 1935, with interest thereon from that date until paid. Appellee says that this conclusion is correct because all evidence to the contrary emanated solely from appellant. It is then argued that as Herbert E. DeWitt is dead, sec. 6209, Code, 1942, sec. 8-286, Code, 1950, precludes the rendition of any decree based on appellant's uncorroborated testimony.

Appellant excepted to the report because five other items, viz., $200, $100, $75, $25, and $25, totaling $425, that he insists he was entitled to as credits upon the purchase price were disallowed. If allowed, these items, along with the $475 found to have been paid by him would have reduced

his indebtedness to $2,100, with interest from October 5, 1945.

The trial court sustained appellee's exceptions and decreed that it recover of appellant $2,815.28, with interest from June 5, 1935, until paid. It overruled appellant's exceptions, thus sustaining the report insofar as it disallowed the five additional credits contended for by him.

Appellant assigns as error (1) the refusal of the court to confirm the commissioner's report insofar as it found that he was only indebted in the sum of $2,525, with interest from October 5, 1945, and (2) its refusal to sustain his contention and exception that he was entitled to the five other credits which would reduce his indebtedness to $2,100, with interest from October 5, 1945.

Section 6179, Code, 1942, sec. 8-250, Code, 1950, provides that the commissioner's report "shall not have the weight given to the verdict of a jury on conflicting evidence, but the court shall confirm or reject such report in whole or in part, according to the view which it entertains of the law and the evidence."

The evidence, as will be hereinafter disclosed, is in some particulars conflicting. It is in part documentary, and in part the testimony of witnesses, none of which was taken in the presence of the commissioner.

Though the court is by the statute given broad power of review over the findings of the commissioner, in so doing it is required to apply correct principles of law in evaluating the evidence and may not arbitrarily disturb the report if supported by competent and preponderating proof. The conclusion of the commissioner should not be upset unless upon a fair and full review according to correct principles of law it appears that the weight of the evidence is contrary to his finding. We are therefore of opinion that in this instance the rule of decision in this court is that we ascertain and determine whether the evidence upon a fair appraisal under a correct application of the law bearing upon its admissibility, character and weight supports the

findings of the commissioner or the conclusions of the trial court. *Sterling* v. *Trust Co.*, 149 Va. 867, 141 S. E. 856, and *Parkes* v. *Gunter*, 168 Va. 94, 190 S. E. 159.

The three exceptions taken by appellee are detailed and argumentative. Each challenges the sufficiency of the evidence to sustain that part of the report which upheld certain of appellant's claims. All exceptions are predicated upon the assertion that the testimony given by appellant is insufficient because it is not corroborated as required by sec. 6209, Code, 1942, sec. 8-286, Code, 1950. They convincingly disclose that sec. 6209, which is specifically mentioned in each, is basically relied upon by appellee to sustain its position that the report was erroneous in the particulars complained of.

Not only does appellee concede that appellant's testimony is adequate to convince the unbiased mind of its truth and factual sufficiency, but its full reliance upon that section as a legal bar to a decision in appellant's favor is made evident and the question to be decided by us is clearly stated in the following extract from the third exception:

"The testimony of the plaintiff, standing by itself, supports his claim that the purchase price bore no interest and was not due until October 5, 1945. Has the testimony of the plaintiff been sufficiently corroborated both in quantity and quality, without which corroboration his claim must fall?"

It will thus be seen that the question at hand is not solely whether the testimony and exhibits offered by appellant were factually sufficient to lead an impartial mind to the conclusion that his contentions were correct. It is rather a mixed question of law and fact that arises solely because of the provisions of sec. 6209. No matter how clear and cogent appellant's testimony may be, it nevertheless must be corroborated. Even if convincing and readily believed, standing alone it cannot support a decree. Then the decisive question is whether or not it is corroborated

within the meaning of the statute by other evidence be-
cause, if it is, it may then be accorded its full worth.

To determine this issue, the testimony of several wit-
nesses must be set out in some detail. The evidence un-
questionably establishes, and it is undenied, that appellant
and Herbert E. DeWitt had been close and devoted friends
since boyhood. They were both engaged in business in the
city of Lynchburg. Appellant's business dealings or pur-
chases of supplies, etc., from decedent had been continuous
and varied over the years.

Though decedent took an active and personal interest in
his business enterprises and was at his office daily, there were
in his employ three trusted employees, *viz.*, J. W. DuPriest,
general manager of his coal, lumber and building operations,
J. W. Tolley, yard superintendent and buyer, and J. H.
Ramsey, his bookkeeper. At times he discussed with these
men his personal as well as business matters.

Appellant says that prior to or about October 1, 1933, he
entered into an agreement with decedent under which he
took possession of this storage warehouse property. Their
understanding, he says, was that he should pay $25 per
month and if he "made good" and decided to purchase the
property at $2,500, then the monthly payments made would
be credited upon that purchase price; otherwise they were
to be deemed rent. He further testified that during early
October 1935, and after he had made numerous payments, he
definitely concluded to buy the property; that he and
decedent discussed the matter at length and it was agreed
that he should have ten years in which to pay for it, and that
at his insistence, decedent finally agreed to accept some in-
terest in addition to the contemplated purchase price of
$2,500, and it was agreed that he execute a bond dated
October 5, 1935, for $3,000, payable ten years after date
and bearing no interest. The $500 increase over the original
price of $2,500 did, as he says, represent the agreed interest
of about two per cent that he had prevailed upon the vendor
to accept because of the long period of time that he, the

vendee, was allowed in which to pay. A bond for $3,000 without interest, he contends, was executed and signed by him and decedent thereupon credited upon the back of the bond the payments of $25 each that had already been made, and it was then placed by decedent in a private lock box in a safe kept by him in his office. The bond was never thereafter seen by any other witness, nor was it located after decedent's death.

J. W. DuPriest testified that he had talked with decedent about this sale time and again and was told that the price for the property was $2,500, and that in these numerous conversations he got the impression that no interest was to be charged. In one of his answers, the witness explained the change from $2,500 to $3,000, as follows: "Well, Mr. DeWitt thought once that Harry wanted to pay for it over a period of years and would make the price $3,000.00 if Harry paid for it on time." Though he testified that he never heard decedent make a direct statement that the sale price would bear no interest, he, the witness, did, however, say that, "In my mind I didn't think DeWitt ever intended charging him any interest."

J. W. Tolley testified that decedent told him that he had sold the property to appellant for $2,500, payable at the rate of $25 per month, if he wanted it, and if not, the monthly payments would be considered rent, whereupon the witness remarked to decedent that the interest would "eat the thing up." And decedent replied that, "I am not charging him any interest—didn't intend to." He said that this conversation took place about the year 1941 and when asked the following question, there was no equivocation in his reply: "Q. Are you positive that he said that he wasn't charging him any interest on the purchase price? A. Yes, sir. I am positive of that."

Appellee relies upon the testimony of J. H. Ramsey to sustain its contention that there is insufficient corroboration of appellant's claim that the indebtedness was evidenced by a bond bearing no interest and payable on October 5, 1945.

An account or cash book kept by decedent at his place of business was identified by this witness and introduced in evidence. Between the dates of November 1, 1933, and January 5, 1935, it discloses on nineteen different dates payments of $25 each. These payments were concededly made on the purchase price of this land. On page 78, a summary appears and there is found this entry: "H. G. Leckie, Storage House, October 1, 1933, (Storage sold to him if he makes good, if it doesn't pay, the payments are to be applied as rent.)" The witness said that at decedent's request, he compiled that memorandum and made up the list of credits from current entries theretofore made and appearing in the book. He also testified that prior to 1937 all of appellant's purchases and credits had been entered on one large account. In 1937 that was separated and thereafter four different accounts were carried wherein appropriate entries were respectively made of payments on the particular account to which applicable. He then explained that the larger three of the five items, all totaling $425, for which appellant claimed credit on his purchase of this property were properly credited to his other accounts and that the two $25 payments were included in the $475 found and reported to have been paid on the land. Thus he says that no part of the $425 item constituted payments on the purchase price of this property except $50 thereof which is included in the nineteen payments that made up the $475.

Further testimony of this witness is that in 1941 decedent requested him to make up statements of appellant's several accounts and in so doing directed that interest be calculated. The statement of this patricular account as made up was introduced by appellee as an exhibit, as were statements of the other three accounts. This exhibit is dated and captioned as follows:

"April 1st, 1941

"Oct. 1, 1933    Sale of Storage
                      Bond                    $3,000.00"

Then follows an item of interest on the $3,000 for one month, October 1, 1933, to November 1, 1933, amounting to $15. Immediately below appear nineteen payments of $25 each with interest calculated, added and entered after each credit on the remaining and decreasing principal. Upon introduction of this exhibit, the witness was asked and answered as follows:

"Q. State whether or not Mr. DeWitt at any time ever mentioned to you whether or not interest was to be charged or was not to be charged on the purchase price for this storage plant?

"A. The only thing would be on that was when he told me to figure up this statement dated April 1, 1941, my exhibit No. 5, that he gave me the amount of the purchase price of the storage, which he termed as 'bond, $3,000.00' and asked me to figure interest on that and then deduct the payments which he made to arrive at the net amount owed."

The evidence further discloses that this account was delivered to appellant a short time after it was compiled and he, appellant, says that a discussion concerning the interest items was had with decedent, who acknowledged the interest to be a mistake and not properly chargeable. The statement was at a later date the subject of a discussion between DuPriest and Ramsey, at which time it appears from DuPriest's testimony that he told Ramsey that he (Ramsey) was wrong in having calculated interest on the debt, "that Mr. DeWitt, from my conversation, intended charging him no interest."

It thus appears that the testimony of Ramsey definitely corroborates appellant's claim that the indebtedness was reduced to the form of a bond, though it does tend to contradict the testimony of appellant and other witnesses that no interest was intended to be charged.

The book entry and decedent's reference to a bond of $3,000 adds to and aids appellant's statement that a bond was in fact executed by him. Likewise the amount of the bond

being shown to have been $500 more than the originally contemplated purchase price, and the testimony of a witness which tends to explain how the increase in the purchase price from $2,500 to $3,000 came about, strengthen appellant's assertion that the added $500 really represented interest at about two per cent, which was included in the $3,000 bond. The testimony of both J. W. DuPriest and J. W. Tolley as to statements made by decedent goes far to corroborate appellant in his claim that no other or further interest was to be charged upon the ultimate debt, however it may have been evidenced.

Corroboration of an adverse or interested party may not emanate from him or depend upon his credibility, but it may come from any other competent witness or other legal source. *Arwood* v. *Hill*, 135 Va. 235, 117 S. E. 603. Whether or not corroboration exists and the degree and quality required is to be determined by the facts and circumstances of each case. *Trevillian* v. *Bullock*, 185 Va. 958, 40 S. E. (2d) 920. Yet it is not necessary that the additional evidence relied upon be of itself sufficient to support a judgment or that it confirm in all particulars that given by him and thus furnish absolute assurance of its truth. It need only be of such character as to aid and strengthen his testimony upon those salient issues that must necessarily be proved to support a judgment and which would otherwise be sustained solely by his testimony. *Burton* v. *Manson*, 142 Va. 500, 129 S. E. 356; *Varner* v. *White*, 149 Va. 177, 140 S. E. 128; *Krikorian* v. *Dailey*, 171 Va. 16, 197 S. E. 442; *Shenandoah Valley Nat. Bank* v. *Lineburg*, 179 Va. 734, 20 S. E. (2d) 541, and *Rorer* v. *Taylor*, 182 Va. 49, 27 S. E. (2d) 923.

We conclude that appellant was sufficiently corroborated by the verbal and documentary evidence as to his claim that a non-interest bearing bond in the sum of $3,000, dated October 5, 1935, and due October 5, 1945, was executed and represented the purchase price of the property and that he was entitled to credits thereon of $475,

leaving a balance of $2,525, with interest from October, 1945, until paid. We further conclude that as to the other and additional credits totaling $425 claimed by him, his testimony lacks corroboration and those credits were properly disallowed by the commissioner and the court.

It follows that the decree of the trial court is reversed and the cause remanded.

*Reversed and remanded.*