A Rehearing <u>En Banc</u> was granted in this case on October 11, 1996.

COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Elder
Argued at Richmond, Virginia


KEVIN JOHNSON

MEMORANDUM OPINION[*] BY
v.          Record No. 2281-95-2      JUDGE JERE M. H. WILLIS, JR.
AUGUST 20, 1996
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
William L. Wellons, Judge

Craig S. Cooley (Betty Layne DesPortes;
Steven D. Benjamin and Associates, on
briefs), for appellant.

Thomas D. Bagwell, Senior Assistant Attorney
General (James S. Gilmore, III, Attorney
General, on brief), for appellee.


On appeal from his conviction of injuring an employee of a correctional facility while a prisoner, Kevin Johnson contends that the trial court erred in finding him competent to stand trial.  Specifically, Johnson contends that he was incapable of assisting his attorney in his own defense.

The indictment charged that on March 13, 1994, while a prisoner in Mecklenburg Correctional Center, Johnson stabbed a corrections officer with a shank that he had secreted in his cell.  On October 7, 1994, Johnson was scheduled for trial but refused to plead to the indictment.  On motion of defense counsel, the trial court ordered a psychiatric evaluation and

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

appointed Dr. Evan Nelson, a licensed clinical psychologist, to evaluate Johnson's sanity at the time of the offense and his competency to stand trial.

Because Johnson refused to cooperate, Dr. Nelson based his findings on an extensive review of Johnson's prison, medical, and court records. At the competency hearing on July 31, 1995, Dr. Nelson testified that before Johnson reached age nineteen, he had been admitted twelve times to psychiatric facilities. Dr. Nelson gave two possible diagnoses for Johnson's behavior: either Johnson suffers from an anti-social personality disorder or he suffers prodromal symptoms as a precursor to schizophrenia. Dr. Nelson testified, "it is my opinion that there is a strong likelihood that Mr. Johnson has a mental illness, and that mental illness would impair his capacity to assist his counsel in the pursuit of his defense at this point in time." However, Dr. Nelson testified that other psychologists in the Department of Corrections, who were familiar with Johnson had reported to him that behavior such as Johnson's was frequently exhibited by inmates acting not under impulse of mental illness, but rather out of "meanness." Dr. Nelson testified that these other psychologists had concluded that Johnson was not mentally ill, but was manipulative.

During the competency hearing, Johnson told the court that he wanted to represent himself. The trial court advised him of the dangers of proceeding pro se and allowed him to move to waive

the competency hearing.  Because Johnson was articulate and responsive, the trial court found him competent to stand trial.

At the trial, Johnson was nonresponsive and uncooperative with both the court and his counsel.  Defense counsel renewed his motion that Johnson be found to be incompetent.  The motion was denied.

The trial court's determination of the competency of a defendant to stand trial is a question of fact.  Delp v. Commonwealth, 172 Va. 564, 570-71, 200 S.E. 594, 596 (1939).  "A factual finding made by the trial court is binding on appeal unless plainly wrong."  Naulty v. Commonwealth, 2 Va. App. 523, 527, 346 S.E.2d 540, 542 (1986).

At a hearing to determine competency, "the party alleging that the defendant is incompetent shall bear the burden of proving by a preponderance of the evidence the defendant's incompetency."  Code § 19.2-169.1(E).  "[T]he standard for competence to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'"  Godinez v. Moran, 113 S. Ct. 2680, 2685 (1993) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)).

Although Dr. Nelson opined that Johnson suffered a mental illness which would impair his capacity to assist his counsel, the trial court also had before it, through Dr. Nelson's

- 3 -

testimony, the opinions of the Department of Corrections' psychologists who had concluded that Johnson was not insane, but acted out of hostility and in an attempt to manipulate the Corrections system.  The trial court observed Johnson's demeanor and, through dialogue, had occasion to assess his mental capability.  This conflicting evidence supports the trial court's determination that Johnson was competent.

The judgment of the trial court is affirmed.

<u>Affirmed.</u>

Benton, J., dissenting.


"[T]he conviction of an accused person while he is legally incompetent [to stand trial] violates due process." Pate v. Robinson, 383 U.S. 375, 378 (1966). The trial judge's determination of this due process question of competency to stand trial, as mandated by Code § 19.2-169.1, is a mixed question of law and fact. See Drope v. Missouri, 420 U.S. 162, 175 (1975). See also Leckie v. Lynchburg Trust & Sav. Bank, 191 Va. 360, 366, 60 S.E.2d 923, 926 (1950). I believe that the evidence clearly proved by a preponderance of the evidence that Kevin Johnson was not competent to stand trial. See Code § 19.2-169.1(E).

The evidence proved that Johnson is psychotic and "has a long mental health history." He has been "admitted to Central State Hospital eight times, Westbrook Hospital two times, and Richmond Memorial Hospital two times." In addition, he has been given inpatient psychiatric treatment in prison. In the year immediately preceding the competency hearing his behavior had greatly deteriorated.

Dr. Evan Nelson, a licensed clinical psychologist, was the only expert who testified concerning Johnson's illness. He testified that Johnson was so mentally ill that he was not competent to stand trial. Although Dr. Nelson candidly informed the trial judge that two psychologists in the Department of Corrections had expressed views that Johnson was manipulative and had the capacity to cooperate, neither of those psychologists

- 5 -

testified or filed reports in the trial court.

Noting that Johnson "has been repeatedly assaultive while in prison and has earned a reputation with the . . . staff to the point where it may be difficult for them to be objective about his current functioning," Dr. Nelson reported the following description of Johnson's decline and current condition:

> [T]here is some evidence that Mr. Johnson's behavior has declined during the past 12 months.  He has maintained distance from others through use of flinging his feces and urine against the door, refusing to communicate on numerous occasions, and even stopped writing letters to prison administrators.  Mr. Johnson has begun hiding himself from view by hanging a sheet on his bars or putting a mattress up.  An undated letter from [Johnson] to his counsel contained bizarre ideas about black and white men, the CIA, and the end of the world.  The content of the letter strongly suggested psychosis. . . .  [H]is previous Public Defender, was contacted to learn about his behavior with her.  She described inappropriate behavior and also provided a copy of a writing sample from June, 1994.  The letter was bizarre and filled with hyperreligious statements which might be indicative of psychosis.

> *    *    *    *    *    *    *

> Psychotic Disorders typically develop in the early twenties and it is possible that, in retrospect, what the staff observed in 1990 as peculiar thinking may have been the precursors of true psychosis.  It is a reasonable hypothesis that the change in [Johnson's] behavior indicates that he is now experiencing psychotic thinking in addition to a primitive and regressed personality.

> Based upon the data available, in the opinion of the undersigned [, Johnson] would have substantial difficulties assisting his counsel in his own defense. . . . Johnson has

- 6 -

had no social contact with any DOC member in a period of six months, he refuses to talk to his own defense counsel, refused to talk to the undersigned and is so regressed that he even behaves in a manner causing him to have no food for periods of four to five days consecutively. It is questionable whether he has the capacity at this point in time to engage in a rational discussion with [his defense counsel] regarding his charges and the consequences. While some portion of his refusal to cooperate is volitional, the undersigned respectfully opines that [Johnson] is mentally ill and cannot rationally assess his options at this point in time.

At trial, Dr. Nelson also indicated that Dr. Fisher, one of the Department's psychologists, "only had passing contact with [Johnson] . . . [and] made me aware that there are instances of inmates who behave this way and it might not be mental illness." Dr. George, the other psychologist, was apparently aware of Johnson's behavior because she supervised the staff at the facility where Johnson was held. In further explaining that persons may mistakenly view Johnson's condition, Dr. Nelson testified as follows:

Q     If an individual is of the condition that you described Mr. Johnson, and that is unable to appreciate his surroundings, unable to assist counsel in preparing for his defense, is it usual for those kind of mental illness cases for that person to be on medication?

A     Not always, it depends on whether or not people identify the behavior as an indication of mental illness. If they don't and they see it as aggressive or manipulative behavior, then they will discount any symptoms of mental illness that might be there.

Q    Your conclusion is that Mr. Johnson appreciated what he was doing on the offense date, but as we sit here, that Mr. Johnson may be in such a mental condition that he cannot fully assist in his defense?

A    Correct.

Q    And further that you would say that given appropriate treatment, that there may be some point in time in the future that he could be declared competent?

A    May I say that somewhat differently?

Q    All right.

A    What I'm saying here is that one cannot give a clear, unequivocal opinion to the Court that this is mental illness or this is manipulative behavior.  I'm saying that there's a high probability in my opinion that this is mental illness.  And if that is the case, then a period of treatment would have a high probability of making him -- or excuse me, restoring him to competen[cy] at sometime in the future.

Q    Did you see anything in this man's record as well as with your interviews which would indicate that his condition today is any different than what it would have been during the time he's been incarcerated?

A    Yes.  There was a distinct pattern of decline in his functioning over the past 12, 18 months.  The letters that he wrote in his first few years in the department of corrections were logical; they were coherent; they had a goal direction; they had a purpose.  And although he was in trouble for assaultive behavior, it seemed to accelerate at the end of 1993, the beginning of 1994.

Since then, he's been in segregation almost continuously; he has incurred most of the problems that he's had with corrections staff of assault and disobeying orders.  And that's also in his pattern of his throwing feces and urine again.  So my opinion is that he has declined over the past 12, 18 months.

(Emphasis added).

At the hearing, Johnson made various statements on his own behalf. In part, his statement was consistent with Dr. Nelson's observation that Johnson was "of at least average intelligence and has an excellent vocabulary and ability to communicate." The trial judge's perception that Johnson was "articulate" and "responsive" does not indicate that Johnson was not psychotic, primitive and regressive, and not competent to stand trial. Johnson's opening remark that "I would like to represent myself on the same accounts of my sister" was a precursor to his unintelligible, unresponsive rambling at the trial and the physical assault upon his trial counsel.

I dissent from the holding that the evidence did not preponderate in proving Johnson was not competent to be tried.