# Richmond.

## DUNLOP, ET ALS., v. H. W. McGEHEE'S EXECUTOR, ET ALS.

### September 25, 1924.

1. PARTNERSHIP—*Partnership Books—Prima Facie Correct.*—The books of a partnership are *prima facie* correct, and the partners (especially the active ones) are presumed to know their contents.

2. PARTNERSHIP—*Partnership Books—Estoppel of Partners—Case at Bar.*— In the instant case, a suit to settle the affairs of a partnership, the court accepted the books of the partnership as a correct record of the interest of the partners *inter se,* and decreed to the executor of a deceased partner $5,000.00 which it appeared from the books he had put into the concern.

   *Held:* That the other partners were estopped, after the death of the deceased partner and their acquiescence in the credit of $5,000.00 of the capital of the partnership to him on its books for nearly six years, to claim that his interest was only $2,500.00.

3. COSTS—*Equity—Counsel Fees—Section 3430 of the Code of 1919.*—Section 3430 of the Code of 1919 does not enlarge the powers of courts of chancery over the subject of fees to counsel, but is intended to put parties on notice and give them an opportunity to be heard upon the claim.

4. COSTS—*Equity—Counsel Fees—Cases in which Fiduciaries or Infants are Parties.*—Courts are constantly called on to make allowances out of funds under their control, not only for counsel's fees, but for other expenses imposed upon parties by litigation, in cases where trustees or other fiduciaries or infants, or other person under disability, are parties; and an allowance to counsel of an executor payable out of the funds of his decedent would have been proper in a suit to settle the affairs of a partnership of which the decedent was a member. But to give the court aid in passing upon the *quantum* of the fee, the fiduciary should enter into a contract with his counsel.

5. COSTS—*Costs between Solicitor and Client—Counsel's Fees.*—There is another class of cases where allowances are made for a party's counsel, not out of the party's own funds, but out of the funds of others, or out of a fund in which others are interested. While there is no statute limiting the powers and discretion of English

chancery courts in the matter of allowance of fees as in our State, some limitation upon the extent of their powers and discretion may be safely stated as well settled in the English practice and indicated in the utterances we have from our own appellate court. This practice arises from the power of courts of equity over the matter of awarding costs. Chief among these are two species of costs, to-wit, "costs as between solicitor and client" and "costs as between party and party."

6. COSTS—*Cost between Solicitor and Client—Counsel's Fees.*—In cases of "costs as between solicitor and client" the principle is "to allow the party as many of the charges, which he would be compelled to pay his own solicitor, as fair justice to the other party will permit." Thus it will be seen that extra costs are not awarded to the attorney who has no connection with the suit except as attorney, or consideration from the court except through his contractual relation with his client, and the court awards extra costs to the litigant to enable him to discharge his contract obligation to his attorney.

7. ATTORNEY AND CLIENT—*Attorney's Fees—Attorney's Efforts Enuring to the Benefit of Another.*—It is true that the amount of an attorney's compensation is fixed by the amount involved in the litigation, yet, if his duty to his client enures to the benefit of another, the law does not justify the court in forcing the relation of attorney and client upon the beneficiary.

8. COSTS—*Counsel's Fees—Party Having Advantage of Services of Another's Counsel.*—There is no power vested in a court of equity in the English practice to decree fees to counsel as extra costs, but where a party has taken advantage of services of counsel of an active party in the litigation, the court may allow the party as many of the charges to pay his own counsel as fair justice to the other party will permit. The relation of attorney and client is a matter of contract, expressed or implied, and the courts are not authorized to make contracts for persons *sui juris*, but to construe and enforce the same.

9. COSTS—*Costs between Solicitor and Client—Counsel's Fees—Party Having Advantage of Services of Another's Counsel.*—In the instant case, a suit to settle the affairs of a partnership, the decree allowed fee of $2,000.00 to the attorneys of the executor of one of the partners, payable out of the partnership funds. From this decree the other partners appealed.

*Held:* That the principles of allowance of costs between solicitor and client do not apply to this case, as appellants have derived no benefit from the services of appellee's counsel, therefore cannot be compelled to contribute to his charges. Besides the appellants were represented by their own counsel, and no case can be found in this jurisdiction where the appellate court has sustained the allowance of a fee to counsel of one party out of the funds of another who was represented by counsel of his own selection.

10. Costs—*Costs between Party and Party—Antagonistic Interest.*—The principle of "costs as between party and party," as applied in the English practice, means that where the interests of the party whose fund sought to be charged is antagonistic to the party for whose benefit the suit is prosecuted, no allowance for counsel fees can be made.

11. Costs—*Costs between Party and Party—Regulated in Virginia by Statute.*—In Virginia the matter of costs between "party and party" is regulated by statute, and no allowance to counsel other than the legally taxed attorney's fee can be charged against the fund of the antagonistic party.

12. Costs—*Counsel's Fees—Antagonistic Interest.*—Where appellants' interests were antagonistic to those of the appellee and they derived no benefit from the services of counsel for appellee and were represented by a counsel of their own, there is no rule of law or equity which would authorize the court to allow out of their funds any part of the compensation to appellee's counsel.

13. Appeal and Error—*Costs in Appellate Court.*—An appellee, who has substantially prevailed on appeal, will be accorded his costs in the appellate court.

Appeal from a decree of the Circuit Court of Buckingham county. Decree for complainant. Defendants appeal.

*Affirmed in part, reversed in part.*

The opinion states the case.

*Geo. E. Allen,* for the appellants.

*Hubard & Boatwright* and *A. B. Dickinson* and *R. L. Montague,* for the appellees.

Christian, J., delivered the opinion of the court.

This was a chancery suit brought in the Circuit Court of Buckingham county by Jno. W. McGehee, executor of H. W. McGehee, to settle the partnership theretofore existing among H. W. McGehee, deceased, A. H. Gilliam, Cameron Dunlop, W. K. & J. L. Payne, under the style and name of H. W. McGehee and Company, and distribute the assets among the parties entitled to

the same.    This partnership was formed by parol agree-
ment in 1915 to buy and sell tobacco; the cash capital
was $10,000.00; McGehee was to furnish $2,500.00 of
the said capital; Gilliam, $2,500.00; Dunlop, $2,500.00;
and the two Paynes, $2,500.00.    Each partner fur-
nished his share of the capital except Gilliam, who con-
ducted the business with Dunlop, but McGehee fur-
nished his share of the capital and was credited by
$5,000.00 on the books of the concern.

There was never any distribution of profits or ac-
counting among the partners, except Gilliam withdrew
part of his share of the profits for his services in the
management of the business.

McGehee lived in South Carolina and never took
active part in the business, and upon his death in 1919
the partnership was dissolved, but the surviving part-
ners, Dunlop and Gilliam, continued to conduct the
business and used its assets until this suit was insti-
tuted.    In the interim between the death of McGehee
and the winding up of the partnership, Gilliam had be-
come indebted to Dunlop.    Such proceedings were had
in the suit that resulted in the ascertainment of the net
worth of the partnership; the character of its assets
and the sale of its real estate, the proceeds of which
were brought into the court for distribution.    Said as-
sets and liabilities of the concern, as well as the interests
of the partners, respectively, were shown on its books
kept under the direction of Gilliam and Dunlop.

No exception was taken to the decree establishing
the interest of the partners among themselves except
as to the input of McGehee.    It appeared upon the
books of the concern that McGehee had put into the
concern $5,000.00, but Dunlop testified that $2,500.00
of McGehee's input of capital should be credited to
Gilliam, as McGehee had agreed to pay in Gilliam's

share of the capital as a loan to Gilliam, whereas Gilliam testified that McGehee agreed with him, Gilliam, that he would pay into the concern $5,000.00 as his and Gilliam's shares of the capital, and in view of McGehee's absence from Virginia, and Gilliam's representation of him, Gilliam should have one-half of his, McGehee's, profits from the concern for his services aforesaid.

Gilliam purchased and prepared the tobacco while Dunlop marketed same for the partnership.

[1, 2] The court accepted the books of the partnership as the correct record of the interest of the partners *inter se,* and decreed McGehee's executor $5,000.00 of the original capital, and one-fourth of the profits. From this decree Dunlop and the Paynes appealed. The books of a partnership are *prima facie* correct, and the partners (especially the active ones) are presumed to know their contents, which Dunlop, from the evidence, clearly did know, and he and the Paynes are estopped now, after the death of McGehee, and their acquiescence in the credit of $5,000.00 of the capital of the partnership to McGehee on its books for nearly six years, to have said entry changed in order that Dunlop might have $2,500.00 thereof applied on a debt which he claims Gilliam owes him. This adjudication is clearly right (even conceding that the appellants have a right to contest the contract between McGehee and Gilliam to which they were not parties) and must be affirmed.

[3] The second decree appealed from was the allowance by the court of a fee of $2,000.00 to the attorneys of McGehee's executor, payable out of the partnership funds. This brings before us sharply the question of the jurisdiction of courts of chancery to allow fees to counsel. An erroneous conception on this subject seems to prevail with many of the profession in that if the

allowance of a fee out of money or property under the control of the court is claimed in the bill, petition, or other proceeding, of which the parties interested shall have due notice, then the court has plenary power to allow the same. Va. Code 1919, section 3430. This section does not enlarge the powers of courts of chancery over the subject of fees to counsel, but is intended to put parties on notice and give them an opportunity to be heard upon the claim.

[4] There is one class of cases where courts are constantly called on to make allowances out of funds under their control, not only for counsel's fees, but indeed for other expenses imposed upon parties by litigation. This class mostly consists of cases where trustees or other fiduciaries, or infants, or other person under disability, are parties. In these cases allowances are made for the counsel's fees of such parties and for other proper expenses, but they are paid out of the party's own funds. The action of the court is invoked in such cases, either because the party is under disability, and unable himself personally to contract for necessary services and to pay for them, or because, though under no disability, the fund which he might rightfully apply and should apply to pay such fees and other expenses is not in his actual possession, but is under the control and in the custody of the court, whose instrument he is for the proper conservation and administration of said fund. There is little difficulty as to the propriety of proper allowances in all such cases, and had an allowance to counsel for McGehee's executor been made under this principle of equity, payable out of the funds of his decedent, no question as to its legality could arise. *Trustees* v. *Greenough*, 105 U. S. 536, 26 L. Ed. 1157; Col. Guy's Address, Va. Bar Association Reports, 1889, page 164. But to give the court aid in passing upon

the *quantum* of the fee, the fiduciary should have entered into a contract with his counsel.

[5] There is another class of cases where allowances are made for a party's counsel, not out of the party's own funds, but out of the funds of others, or out of a fund in which others are interested. While there is no statute limiting the powers and discretion of English chancery courts in the matter of allowance of fees as in our State, some limitation upon the extent of their powers and discretion may be safely stated as well settled in the English practice, and indicated in the utterances we have from our own appellate court. This practice arises from the power of courts of equity over the matter of awarding costs. Chief among these are two species of costs, to-wit, "costs as between solicitor and client" and "costs as between party and party." 3 Dan. Chy. Pr. 1580.

[6, 7] In cases of "costs as between solicitor and client" the principle is "to allow the party as many of the charges, which he would be compelled to pay his own solicitor, as fair justice to the other party will permit." 3 Dan. Chy. Pr. 1530. Thus it will be seen that extra costs are not awarded to the attorney who has no connection with the suit except as attorney, or consideration from the court except through his contractual relation with his client, and the court awards extra costs to the litigant to enable him to discharge his contract obligation to his attorney. It is true that the amount of an attorney's compensation is fixed by the amount involved in the litigation, yet, if his duty to his client enures to the benefit of another, the law does not justify the court in forcing the relation of attorney and client upon the beneficiary. *Stanton* v. *Hatfield*, 1 Keen, 358. It is sometimes the practice of attorneys to make no contract with their client, whose interest is

frequently small, to bring the suit, and he expects the judge to allow him out of the fund often a larger sum than the client's interest justifies, thus making the court, under the guise of the allowance of extra costs to the litigant, make a contract for the attorney with strangers or force an attorney upon the litigant without his consent.

[8, 9] It will be observed that there is no power vested in a court of equity in the English practice to decree fees to counsel as extra costs, but where a party has taken advantage of services of counsel of an active party in the litigation, the court may allow the party as many of the charges to pay his own counsel as fair justice to the other party will permit.   The relation of attorney and client is a matter of contract, expressed or implied, and the courts are not authorized to make contracts for persons *sui juris*, but to construe and enforce the same.   The principles of allowance of costs between solicitor and client do not apply to this case, as appellants have derived no benefit from the services of appellee's counsel, therefore cannot be compelled to contribute to his charges.   Besides, the appellants were represented by their own counsel and no case can be found in this jurisdiction where the appellate court has sustained the allowance of a fee to counsel of one party, out of the funds of another, who was represented by counsel of his own selection.   *McCormick* v. *Elsea and others*, 107 Va. 472, 59 S. E. 411; *Stuart* v. *Hoffman*, 108 Va. 309, 61 S. E. 757; *McClanahan's Admr.* v. *N. & W. Ry. Co.*, 122 Va. 705, 96 S. E. 469.

[10] The principle of "costs as between party and party," as applied in the English practice, means that where the interest of the party whose *fund* sought to be charged are antagonistic to the party for whose bene-

fit the suit is prosecuted, no allowance for counsel fees can be made.

[11] In Virginia the matter of costs between "party and party" is regulated by statute, and no allowance to counsel other than the legally taxed attorney's fee can be charged against the fund of the antagonistic party. *Bank of Charlottesville* v. *Manoni,* 76 Va. 802-808; *Stovall* v. *Hardy,* 1 Va. Dec. 342-349; *McCormick* v. *Elsea,* 107 Va. 472, 59 S. E. 411.

[12] The appellants interests were antagonistic to those of the appellee. They derived no benefit from the services of counsel for appellee, and were represented by counsel of their own. Therefore there is no rule of law or equity which would authorize the court to allow out of their funds any part of the compensation to appellee's counsel. This part of the second decree will have to be reversed and the cause remanded to the Circuit Court of Buckingham for further proceedings in accordance with this opinion.

[13] As appellee has substantially prevailed in this appeal he will be accorded his costs in this court.

*Affirmed in part, reversed in part.*