# Richmond

## J. E. TREVILLIAN v. THOMAS M. BULLOCK, ADM'R, ETC.

January 13, 1947.

Record No. 3129.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Tucker, Mays, Cabell & Moore,* for the plaintiff in error.

*Buford, Christian & Huntley,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Thomas M. Bullock, administrator of George W. Trevillian, instituted an action at law on a note against the makers who signed as "J. E. Trevillian and J. W. Trevellian, by J. E. Trevillian, Ext." The amount of the note was $830.68. It bore interest at the rate of five per cent and was made on June 1, 1938. Judgment was entered against J. E. Trevillian individually and alone. The court hearing the case without a jury, sustained the plea of the statute of limitations interposed on behalf of the other defendants. This writ of error is being prosecuted by J. E. Trevillian in his individual capacity and therefore we are only concerned with his liability.

The plaintiff in error admits signing the note but contends that he received no consideration therefor and consequently is not liable on it.

Code of 1942, sec. 5586 (Michie), provides:

"Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration and every person whose signature appears thereon to have become a party thereto for value."

Consideration is defined in Code of 1942, sec. 5587 (Michie), in this language:

"Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time."

And Code of 1942, sec. 5590 (Michie), gives the effect of want of consideration. It reads:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course, and partial

failure of consideration a defense *pro tanto*, whether the failure is an ascertained and liquidated amount or otherwise."

Still another familiar statute is pertinent here. It is Code of 1942, sec. 6209 (Michie). It provides, among other things, that in actions by and against personal representatives and others, "no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony."

Under section 5586, the plaintiff in error is deemed *prima facie* to have received valuable consideration for his signature on the note. His defense under section 5590, which he had the burden of proving, was that he received no consideration. It was his duty to overcome the statutory presumption of consideration. Whether he carried this burden was a factual question, and the trial court before whom the case was submitted, sitting without a jury, resolved ·the question against him. That might well end the case here, for there was evidence from which the court reasonably could have found that the statutory presumption of consideration had not been overcome.

It would be highly improbable to conclude that the plaintiff in error failed to realize the effect of his signing· the note. He was a business man and had been in business with his brother who was the father of George W. Trevillian. The latter held the original note· of $600. It might have been inferred that the proceeds of this note were placed in the business conducted by him and his brother. Again it is shown that the note of June 1, 1938, carried interest at the rate of five per cent instead of six per cent which was carried upon the original note. This, to a great extent, offset the effect of the testimony of the plaintiff in error when he stated that the note was "no good", for if it were not good he would not have been interested in seeing that the rate of interest was reduced. When asked about this change in interest he said, "I think probably I told him he was asking too much." He also knew the original note to which he was not a party was barred by the statute of limitations, nevertheless, he signed the new note and made him-

self liable therefor when he was not liable on the original note.

Under section 5587, if he either got any benefit from the original note or received any benefit for his signature to the note of June 1, 1938, he is bound. The statutory presumption of section 5586, the circumstances and the reasonable inferences to be drawn therefrom, are sufficient to support the judgment. The court was not compelled to believe the unreasonable testimony of the plaintiff in error.

Another decisive question which the trial court may have resolved against the plaintiff in error is that there was no corroboration of his testimony as is required by Code, sec. 6209. He gave this as his reason for signing the 1938 note: "He came in the store and told me he held this note his father gave him, wanted to get it renewed. I told him 'George, this note is out of date to start with, why didn't you present this note when your father died. The estate hasn't anything at all, as you well know. I don't see why you held this note all this time.' Said 'Well, I just had it in my pockets and didn't pay any attention to it.'"

And he further testified: "I said, 'Well, you know the estate is involved, and you know they owe me between four and five thousand dollars which I will never get.' 'Well', he says, 'I just would like to have something because it isn't settled yet, and if it is ever settled I would like to have something to show for it, if there is anything coming.' I said 'I don't mind giving you a note, but the note I am giving you is no good. You know that.' So that is the way he held that note."

The plaintiff in error contends that the chief corroborating evidence consisted of the two notes filed as exhibits and the fact that the old note was never surrendered. This, he claims, amply corroborates his testimony that he received no consideration for his signature to the renewal note.

The 1931 note affords no proof or corroboration that the plaintiff in error received no consideration for the 1938 note. He bargained with George Trevillian, the holder, about the interest, and got it reduced from six per cent to

five per cent. Then he signed the note. It is unreasonable and highly improbable to say he received no benefit from his signature to the note under these circumstances.

The explanation given by the plaintiff in error when measured by what an ordinary man would do under similar circumstances, is not only not convincing but is incredible. Ordinarily, unless a consideration moves to him, a person will not become the maker of a renewal note when the original obligation did not bind him and was barred by the statute of limitations. Here the plaintiff in error claims that he affixed his signature to the note purely as a gratuity. No reason is shown for extending this gratuity. To say the least, his explanation is not a plausible or reasonable one for his action.

This is one of those cases to which this court had reference when it indicated in *Ratliff* v. *Jewell*, 153 Va. 315, 149 S. E. 409, 67 A. L. R. 1541, that where the narrative to be corroborated runs counter to common experience more is required to corroborate it than where it is in line with common experience. In the case referred to, at page 326, we said: "Its character and amount must measurably be gauged by the facts sought to be established. A narrative which runs counter to common experience should be buttressed to an extent not necessary were it fair upon its face, and no amount of testimony can sufficiently corroborate evidence of facts inherently improbable, which is but another way of saying that the same process of reasoning should hold in courts which governs us out of them."

How much corroboration is required depends upon no hard and fast rule but rather upon the facts in each case. There are many adjudicated cases in Virginia in which the application of section 6209 has been considered. A large number of them are collected in 9 Digest of Va. and W. Va. Reports, (Michie), Witnesses, sections 38, 39, and 40. There is no necessity for restating the rule which has long controlled in cases of this kind in Virginia.

We do not think there was any evidence of corroboration in this case. Even if there were, it would have been a

question of fact for the court trying the case without a jury. Under such circumstances, a finding by the court of the absence of sufficient corroboration would bind this court.

The judgment is affirmed.

*Affirmed.*