## Staunton

CAROLYN HODGE, ET AL. v. AUDRIA E. KENNEDY, ETC., ET AL.

September 4, 1956.

Record No. 4550.

Present, All the Justices.

The opinion states the case.

*James L. Jones* and *Edgar T. Reeves, Jr.*, for the appellants.

*W. Earle Crank* and *Alexander H. Sands, Jr.* (*Edward A. Marks, Jr., Sands, Marks, Hening & Sydnor*, on brief), for the appellees.

MILLER, J., delivered the opinion of the court.

Prior to February 19, 1929, J. T. Edenton, Preston H. Haskell and Charles C. Rhea were engaged as partners in buying land, cutting timber and processing lumber under the firm name of J. T. Edenton and Company. As of that date the partnership owned five tracts of land in Louisa county, Virginia, aggregating 491 acres, which had been deeded to J. T. Edenton but actually belonged to the firm.

The partnership was indebted to the Bank of Louisa in the sum of $10,395.70, and on February 19, 1929, Haskell paid one-half of the debt, *i.e.*, $5,197.85 in cash to the bank and Edenton assumed payment of the remainder of the debt to the bank. Edenton was also individually indebted to the bank at the time in the sum of $2,900.00. To secure his individual indebtedness and the balance of $5,197.85 owing to the bank by the partnership, Edenton and wife, Augusta L. Edenton, executed notes and also a deed of trust on Edenton's lands in Spotsylvania county. This trust deed dated February 19, 1929, secured first Edenton's individual pre-existing debt of $2,900 and secondly, the $5,197.85 partnership indebtedness evidenced by a note of even date payable four months after date. On the same date Edenton and wife, Haskell and wife, and Rhea, unmarried, executed a deed of trust on the partnership land of 491 acres and upon

one 20 horse power Ajax engine and boiler and one Number 3 American sawmill and equipment, as further security for the note of $5,197.85 given to the bank by J. T. Edenton and wife.

Upon execution of these notes and deeds, all active partnership business ended, and Edenton was left in charge of the firm's property and affairs, and he paid the taxes upon its lands each year. Haskell died April 13, 1931, leaving his widow, Susie H. Haskell, sole beneficiary under his will, and Howze Haskell qualified as administrator, c.t.a., of his estate. Rhea died in Tennessee on November 1, 1933, intestate. He left two sisters, *i.e.*, Carolyn Hodge and Eleanor R. Wright, and several nieces and nephews as his heirs and distributees, and W. C. Bickers qualified in Virginia as ancillary administrator of his estate.

On April 13, 1953, J. T. Edenton and Howze Haskell, administrator, filed their bill of complaint against W. C. Bickers, ancillary administrator of Charles C. Rhea, deceased, Carolyn R. Hodge, Eleanor R. Wright and others, heirs and distributees of decedent. Complainants alleged that the debt of $10,395.70 owing by the partnership to the bank had been paid by Haskell and Edenton and constituted loans to the partnership for which Haskell's administrator and Edenton should be repaid. They sought ascertainment of the partnership obligations, an accounting and settlement of its affairs and distribution of assets to the parties entitled thereto.

Bickers, administrator, Carolyn Hodge and Rhea's other heirs and distributees answered the bill. None admitted or denied the allegation that Haskell and Edenton had each paid the sum of $5,197.85 to the bank on account of the partnership obligation of $10,395.70. However, they asserted that if those sums had been advanced for the partnership in 1929, its obligations to repay Haskell's administrator and Edenton were "now barred by the Statute of Limitations," and laches.

They also asserted that Edenton had cut and sold timber from the partnership lands and failed to account for profits obtained from the partnership and asked for an accounting.

The deposition of J. T. Edenton was taken before Commissioner S. A. Cunningham on April 23, 1953, and on June 8, 1953, the cause was referred to Commissioner Cunningham with directions to report upon inquiries formulated in response to the allegations of the bill and the issues made by the pleadings.

On July 2, 1953, Edenton died and the cause was revived against

Audria E. Kennedy, his executor, and Augusta L. Edenton, sole beneficiary under his will. Other evidence was then taken by the commissioner, and he filed his report on June 4, 1955, along with all the testimony and exhibits upon which it was based.

The commissioner reported that the sums paid by Haskell and Edenton to the bank constituted loans or advances to the partnership and that the partnership was indebted to Haskell's administrator in the sum of $5,197.85, with interest from February 19, 1929, subject to a credit of $269.69 as of February 19, 1929. He also found that the partnership was indebted to Edenton's executor in the sum of $5,197.85, with interest from February 19, 1929. This indebtedness was subject, however, to several substantial credits as of stated dates, totaling $5,217.89, principally derived from sales of timber by Edenton in 1946 and 1949, and the sum of $1,298.20 paid in 1952 by the New Jersey Lead and Zinc Company to Edenton for an option to purchase partnership lands believed to contain mineral deposits.[1] The commissioner also found that Edenton had paid taxes on the partnership lands from 1929 to 1952, and reported that his executor was entitled to recover these items with interest from the dates of payment.

Rhea's administrator, Carolyn Hodge, and the other heirs and distributees of Rhea excepted to the report on the ground that Edenton's testimony that $5,197.85 was owing by the partnership to Haskell's administrator and to him was not corroborated, and under the provisions of § 8-250, Code 1950, without corroboration there could be no recovery from the partnership; that the claims of Haskell's administrator and Edenton's executor were barred by § 8-13, Code 1950, and by laches; and if recovery be permitted, there should be no allowance of interest.

On May 13, 1955, the trial court entered an interlocutory decree which adjudicated the principles of the cause, overruled all exceptions to the report, and confirmed the commissioner's findings in all respects, and from that decree we granted Carolyn Hodge and others an appeal.

The errors assigned to the decree are the same as the exceptions taken by Carolyn Hodge and others to the commissioner's report.

---

[1] The company had actually paid $1,600 for the option but it covered 114 acres individually owned by Edenton and by proration on acreage, the commissioner found that the partnership was entitled to $1,298.20 and Edenton to $301.80.

Summarized, the pertinent evidence returned with the report is as follows:

The deed of trust executed by the partners on February 19, 1929, as additional security for the note of that date given by Edenton and wife to the bank was filed as an exhibit before the commissioner. It recites that the partnership was indebted to the bank for $10,395.70 and that Haskell and Edenton had undertaken to pay that indebtedness by Haskell paying one-half in cash and "Edenton securing the payment to the said bank of the other one-half."

J. T. Edenton testified that the sum of $10,395.70 was owing to the bank by the partnership and half was paid by Haskell and half by him and that Rhea had paid no part of the indebtedness. He also said that when the firm ceased active business in February, 1929, he was left in charge of its property and affairs, and he sold a boiler and engine for $500 and collected $39.38 owing the partnership, deposited one-half of these sums to Haskell's credit and retained one-half himself. He also testified that he sold $1,350 worth of standing timber to Harper Brothers and 430,292 feet of standing timber to his son, J. M. Edenton, in 1946 for $5.00 per thousand feet and in 1952 he was paid $1,600 by New Jersey Lead and Zinc Company for an option on lands owned by the partnership and by him.

J. M. Edenton testified that in 1946 he and his father purchased and cut 450,000 feet of timber (instead of 430,292 feet) at $5.00 per thousand, and that $5.00 per thousand was a fair price.

Henry W. Harper testified that in 1949 he and his brother purchased $1,400 worth of mixed standing timber from J. T. Edenton at about $5.00 per thousand feet which he said was a fair price.

Section 8-250, Code 1950, provides that the commissioner's report "shall not have the weight given to the verdict of a jury on conflicting evidence * * *," and in passing upon the commissioner's findings of fact, the court is guided by that provision.

Here, however, there is no material conflict in the evidence which was heard by the commissioner and his report has been confirmed in all respects by the court. The judgment confirming the report should not be disturbed unless erroneous principles of law were applied or the judgment is contrary to the evidence. *Gilmer* v. *Brown*, 186 Va. 630, 44 S. E. 2d 16.

There is no merit in the contention that there was no corroboration of Edenton's testimony. Recitals in the deed of trust given by the three partners to the bank on February 19, 1929, furnish

ample corroboration of Edenton that the payments to the bank by Haskell and Edenton were in fact loans and advances to the partnership. Also tending to corroborate Edenton is the fact that when the sawmill was sold by Edenton for $5.00, and an item of $39.38 collected, he deposited one half of these sums, *i.e.*, $269.69 to Haskell's credit and retained the balance as a credit upon his claim against the partnership.

"Whether or not corroboration exists and the degree and quality required is to be determined by the facts and circumstances of each case. *Trevillian* v. *Bullock*, 185 Va. 958, 40 S. E. 2d 920. Yet it is not necessary that the additional evidence relied upon be of itself sufficient to support a judgment or that it confirm in all particulars that given by him and thus furnish absolute assurance of its truth. It need only be of such character as to aid and strengthen his testimony upon those salient issues that must necessarily be proved to support a judgment and which would otherwise be sustained solely by his testimony. *Burton's Ex'r* v. *Manson*, 142 Va. 500, 129 S. E. 356; *Varner* v. *White*, 149 Va. 177, 140 S. E. 128; *Krikorian* v. *Dailey*, 171 Va. 16, 197 S. E. 442; *Shenandoah Valley Nat. Bank* v. *Lineburg*, 179 Va. 734, 20 S. E. 2d 541, and *Rorer* v. *Taylor*, 182 Va. 49, 27 S. E. 2d 923." *Leckie* v. *Lynchburg Trust, etc., Bank*, 191 Va. 360, 370, 60 S. E. 2d 923.

Rhea's administrator, his heirs and distributees invoke § 8-13, Code 1950, and assert that its five year limitation bars the debts owing to Haskell's administrator and Edenton's executor. The pertinent provisions of that section follow:

"Every action to recover money which is founded upn an award, or on any contract, other than a judgment of recognizance, shall be brought within the following number of years next after the right to bring the same shall have first accrued, that is to say:

\*  \*  \*  \*  \*  \*  \*

"If it be upon any other contract express or implied within three years, unless it be an action by one partner against his co-partner for a settlement of the partnership account \* \* \* in \* \* \* which cases the action may be brought until the expiration of five years *from the cessation of the dealings in which they are interested together, but not after;* \* \* \*" (Emphasis added.)

Appellants insist that "the cessation of the dealings in which"

the partners were interested together was when the payments and deeds of trust were made and executed on February 19, 1929.

The evidence shows that on February 19, 1929, the partnership ceased to engage in the business that it had theretofore actively conducted and that on April 13, 1931, it was dissolved by the death of Haskell. Section 50-29, Code 1950.[2] Yet the dissolution did not terminate the partnership, for under § 50-30, Code 1950, that continued until the winding up of its affairs was completed. After February 19, 1929, a boiler and engine were sold by Edenton who had been left in charge of the partnership affairs and property, and in 1946 and 1949, timber was sold from the partnership lands. In 1952 a substantial sum was derived from the sale of an option to purchase partnership property, and the sums derived were credited upon the partnership debt. During this period Edenton had been paying the taxes on the land and the trust deed executed by the partners and in which they were interested was not paid off or released until 1949.

In *Foster's Curator* v. *Rison, et al.,* 17 Gratt. (58 Va.) 321, 334, the court construed the phrase "the action may be brought until the expiration of five years from the cessation of the dealings in which they are interested together, but not after," and said:

"The time prescribed by the statute does not begin to run as to any of the partnership *dealings* until there has been a *cessation* of all of them. But what acts are comprehended in the word 'dealings' in the meaning of the Code, may be a question of some doubt. Is the word confined to the active operations of the partnership during its continuance, or does it embrace also any act done after its dissolution in winding it up; such as the collection or payment of outstanding debts due to or by the firm, and even good debts due to the firm, outstanding when the suit is brought? I think the word should be construed in the latter and extended sense; otherwise no action or suit could be brought for a settlement of a partnership account after the lapse of five years from the dissolution of the partnership, although its business may not have been wound up for a long time thereafter."

Other decisions and authorities approve and are in accord with this interpretation of the statute. *Marsteller* v. *Weaver's Adm'x.,* 1 Gratt. (42 Va.) 391; *Jordan* v. *Miller, et al.,* 75 Va. 442; 14 M. J., Partnership, § 56, p. 256, and cases cited; *George R. Riddle, et al.* v. *Joseph M. Whitehill,* 135 U. S. 621, 10 S. Ct. 924, 34 L. ed. 282.

---

[2] All citations to Title 50, Code 1950, are to The Uniform Partnership Act.

Here the evidence shows that the partnership was indebted to Haskell and Edenton and that in 1946 and 1949 timber was cut and sold, and an option was given on its lands in 1952. The trust deeds on the partnership assets were not paid off and released until 1949, and Edenton paid the yearly taxes as they accrued from 1929 until 1952. All of these transactions and payments were made by Edenton who had been left in charge of the partnership property and affairs. Clearly when the bill was filed on April 13, 1953, five years had not then expired from the cessation of dealings in which the partners (or their personal representatives) were interested.

█ The claims of Haskell's administrator and Edenton's executor against the partnership are not barred by the statute, nor do we think that laches precludes them from recovery. The personal property owned by the partnership was disposed of shortly after the firm ceased its operation. Its remaining property consisted of timber lands with growing timber thereon and there was a probability that valuable minerals were under these lands. The assets were increasing in value, and it would not have been to the best interest of the owners to dispose of the partnership property prematurely. Though there has been delay in settling the partnership affairs and disposing of its property, yet the timber lands have increased in value and the present heirs and distributees of the three original partners have not been harmed by this delay.

"Length of time is not alone a test of staleness, and mere lapse of time, unaccompanied by some circumstances affording evidence of a presumption that the right has been abandoned, is not laches." *Branner* v. *Branner's Adm'r.*, 108 Va. 660, 663, 62 S. E. 952.

"Mere delay without more will not constitute laches." *Gilley, et al.* v. *Nidermaier*, 176 Va. 32, 43, 10 S. E. 2d 484. 7 M. J., Equity, § 30, p. 53.

█ Should interest be allowed on the sums due Haskell's and Edenton's personal representatives?

Section 50-18, Code 1950, provides as follows:

"The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"(c) A partner, who in aid of the partnership makes any payment or advance beyond the amount of capital which he agreed to con-

tribute, shall be paid interest from the date of the payment or advance. * * *"

The sums due Haskell's administrator and Edenton's executor are clearly stated in the deed of trust of February 19, 1929. The evidence is sufficient to show that the payment to the bank by each partner was a "payment or advance beyond the amount of capital which he agreed to contribute", and there is nothing to indicate that the allowance of interest should be denied.

The decree appealed from is

*Affirmed.*