## Richmond

### Seaboard Citizens National Bank of Norfolk, Exec., Etc., Et Al. v. Hilda C. Revere.

March 10, 1969.

Record No. 6840.

Present, All the Justices.

*M. T. Bohannon, Jr.* (*Herbert and Bohannon,* on brief), for appellants.

*William L. Parker* (*Michael B. Wagenheim,* on brief), for appellee.

HARRISON, J., delivered the opinion of the court.

Hilda C. Revere, a legatee under the will of D. D. Jones, deceased, to whom the decedent bequeathed his one-third interest in a partnership known as "Circle Service Station" in Norfolk, filed her bill of complaint against Seaboard Citizens National Bank of Norfolk, Executor of the last will of the decedent, and Thomas H. Jones and Robert W. Jones, surviving partners in Circle Service Station. The bill alleged that Thomas H. Jones and Robert W. Jones had fraudulently caused the partnership books to be altered after the death of decedent, whereby their capital accounts had been credited with $10,000 and the equity of the testator had been reduced by that amount, and that their actions should be set aside. She prayed a settlement of the partnership, the award of a judgment for her interest and general relief.

Answers were filed by the respondents, and the matter was referred to a commissioner in chancery for the taking of accounts. The commissioner reported the capital accounts of the partners as: D. D. Jones (deceased) $10,410.21; T. H. Jones $11,058.22; R. W. Jones $11,202.82. Exceptions were noted to the report by all parties. The court, by its decree of July 14, 1967, confirmed the report, holding the capital account of the parties, as of April 30, 1965, and their interest in the partnership, to be as reported by the commissioner. The respondents excepted to this action of the court, and we granted them an appeal.

D. D. Jones died testate on April 20, 1965, possessed of a substantial estate, which included a one-third interest in a service station and controlling interest in D. D. Jones Transfer and Warehouse Company, Inc., both located in Norfolk. The only portion of his will pertinent to this case is the bequest to Hilda C. Revere of the testator's interest in the service station. Miss Revere had been in the employ of the decedent over a long period of years and had kept the books of the Circle Service Station for twenty years. However, the greater portion of her salary was paid by the D. D. Jones Transfer and Warehouse Company, Inc., for which she also worked.

D. D. Jones made a gift of a one-third interest in the station to each of his sons on or about the 1st day of January, 1952, and on that date a partnership agreement was signed by them.

The books of the station were examined annually by Edmondson, Ledbetter and Ballard, Certified Public Accountants, of Norfolk. Fol-

lowing each audit, a written report, reflecting the transactions of the station, was prepared and sent to Messrs. D. D., T. H. and R. W. Jones, trading as Circle Service Station, at the office of the station. Filed as exhibits are four of these audits covering operations for the years 1961, 1962, 1963 and 1964. It is noted that the capital account of each of the three partners is shown to be a different amount in every year.

About ten days after the death of the decedent, Vernon N. Winquist, a member of the accounting firm, was told by T. H. Jones and R. W. Jones that they had no knowledge of certain entries on the books of the partnership showing various amounts charged to their respective capital accounts, and withdrawn by D. D. Jones. Mr. Winquist was directed to correct these entries, the effect of which was to reduce the interest of the D. D. Jones estate by $10,000, and to increase the capital accounts of T. H. Jones by $5300 and R. W. Jones by $4700. This alteration of the books was done with the knowledge of the executor and was accomplished when the following entries on the books were reversed:

Entries dated June 30, 1955, August 27, 1957 and September 30, 1958, crediting D. D. Jones with $1500, $2000 and $1800, and charging T. H. Jones with the respective amounts.

Entries dated August 27, 1957, September 30, 1958 and October 9, 1964, crediting D. D. Jones with $1000, $700 and $3000, and charging R. W. Jones with the respective amounts.

The commissioner in chancery found the correct balance of the decedent, D. D. Jones, in the partnership to be $12,359.97, and to this balance he added the net income belonging to the estate of decedent for the period from January 1, 1965 to April 30, 1965 of $519.45, and the sum of $530.79, which represented an additional investment by the decedent prior to his death.

From this total of $13,410.21, the commissioner deducted the sum of $3000, the amount of the entry dated October 9, 1964, charged against the capital account of R. W. Jones. His explanation of the $3000 item was that it occupied a different status from all other entries in that the financial statement of the accountant reflecting the partnership's transactions for the year 1964 was not presented to the firm until February 15, 1965, and that R. W. Jones had not had sufficient time to examine this statement and voice any objection thereto.

The appellee, although excepting to this finding, did not assign cross-error to the action of the court confirming the report of the commissioner, and therefore the correctness of this determination is not before us for decision.

R. W. Jones had been employed by D. D. Jones Transfer and Warehouse Company, Inc., owned by his father, since 1956. He stated that from time to time, in addition to his salary, his father advanced him money and gifts; that he purchased a home about three years prior to his father's death for which he paid $55,000, and of which sum his father advanced or gave him $25,000; and that he occasionally would purchase clothes and charge them to his father. When asked if his father gave him $1000 in 1957, his response was "I don't recall it". He had no explanation of the other charges to his capital account, and denied any knowledge thereof.

When asked if it occurred to him how his father kept the books of the partnership during his lifetime, R. W. Jones responded: "No, whatever he wanted to do was perfectly all right." He further said: "I never questioned him about his books on the service station. . . . Frankly, in his later years the service station seemed to be his primary interest and it gave him something that he could look after."

T. H. Jones has been a full time employee of the D. D. Jones Transfer and Warehouse Company, Inc. since 1946. His salary was $18,000 the last year of his father's life. In addition he received a bonus from time to time. In 1955 this father gave his son a one-third interest in this business, retaining a two-thirds interest. This son testified that he never received the annual financial reports of the service station but that each year either his father, or Mr. Winquist, would give him information of the profits and losses which were reflected in his personal income tax return. He had no explanation or knowledge of the various entries whereby his capital account was charged with certain sums. When questioned regarding the operation of the service station, he said, referring to his father: ". . . [I]t was his baby, he watched out for it."

The only thing Miss Revere knew, with reference to the charges made against the capital account of the sons, was the decedent's observation: "Well, he said that was about the only way he would ever get the money that he had advanced the boys." She did say, with reference to the annual financial statements received from the accountants: "The mail was addressed to Mr. D. D. Jones; he distributed the statements."

Consideration of this case involves not only the family relationship between father and sons, but the tax implications and the possible interplay between the partnership, operating a service station, and the larger business, D. D. Jones Transfer and Warehouse Company, Inc. Both were family-owned, family-controlled and family-operated. The balance sheets of the partnership showed a large account receivable due each year to the partnership by the D. D. Jones Transfer and Warehouse Company, Inc., varying from $7,424.44 on December 31, 1961 to $19,510.37 on April 30, 1965.

We have before us a report of a commissioner in chancery, who heard the evidence *ore tenus*, fully approved by the trial court. While the report is not entitled to the weight given the verdict of a jury on conflicting evidence, it is entitled to great weight and should not be disturbed unless its conclusions are unsupported by the evidence. The decree of the court confirming the report carries the presumption of correctness and will not be reversed unless plainly wrong. *Pavlock, et al.* v. *Gallop, et al.*, 207 Va. 989, 154 S. E. 2d 153 (1967); *McGrue, Executrix* v. *Brownfield*, 202 Va. 418, 117 S. E. 2d 701 (1961); *Surf Realty Corp.* v. *Standing*, 195 Va. 431, 78 S. E. 2d 901 (1953); 16 Mich. Jur., Reference and Commissioners, § 39, p. 35.

Detailed books were kept of the Circle Service Station by an experienced bookkeeper, reflecting all transactions of the business, and were audited annually by accountants. They are prima facie correct, and partners, especially active ones, are presumed to know their contents. In *Dunlop* v. *McGehee's Ex'r.*, 139 Va. 643, 647, 124 S. E. 199, 200 (1924), this court said:

"The court accepted the books of the partnership as the correct record of the interest of the partners *inter se*. . . . The books of a partnership are *prima facie* correct, and the partners (especially the active ones) are presumed to know their contents. . . . This adjudication is clearly right . . . and must be affirmed."

In 68 C. J. S., Partnership, § 92, p. 530, it is said:

"Statements of account, whether taking the form of periodic balances on the firm's books or of formal documents interchanged among the partners, or otherwise, are generally conclusive on the partners unless impeachable because of fraud or mutual mistake."

Manifestly, the books of a partnership and the entries therein, can be challenged. A surviving partner is not estopped from showing the correct facts merely because the books reflect something different. And the relationship of the partners does not affect their legal obligations and responsibilities one to another. However, a partner who challenges the correctness of the partnership books and alleges fraud, irregularity and improper entries, must carry the burden of proof and show wherein the books are incorrect. Here we are not confronted with an accounting between living partners, but an accounting between the estate of a deceased partner on the one hand and the two surviving partners on the other.

D. D. Jones is dead and his testimony is therefore not available. Code § 8-286 deals with the corroboration that is required and the evidence that is receivable when one party is incapable of testifying. It provides:

> "In an action or suit by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; and in any such action or suit, if such adverse party testifies, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence."

Normally the suit brought by Miss Revere, a legatee, would have been instituted by the personal representative of the testator. In the instant case the executor is represented by the same counsel representing Thomas H. Jones and Robert W. Jones, which, in the opinion of the appellee, presented a conflict of interest. It is well-settled that under special circumstances a legatee may file a bill against the personal representative of the decedent and the surviving partner. The appellants challenged the right of the legatee by demurrer to maintain this suit in the court below. The trial court was correct in overruling the demurrer. The case of *Nicholson* v. *Shockey*, 192 Va. 270, 64 S. E. 2d 813 (1951), sustains the ruling. There Mr. Chief Justice Eggleston, speaking for the court, said:

> "While technically this is not a suit by Harry A. Shockey against his mother's estate or personal representative, it is in effect

such a proceeding. He claims title to funds by virtue of a gift which he says his mother made to him during her lifetime, while the appellants claim that such gift is nugatory, that the fund should be paid to and administered by the executor under the terms of the will. Thus Harry A. Shockey is 'an adverse or interested party' who seeks a decree against his mother's estate sustaining that gift. Under the terms of the statute such a decree cannot be 'founded on his uncorroborated testimony.' See *Grace* v. *Virginia Trust Co.*, 150 Va. 56, 142 S. E. 378; *Shenandoah Valley Nat. Bank* v. *Lineburg*, 179 Va. 734, 20 S. E. (2d) 541." 192 Va. 270, 283, 64 S. E. 2d 813, 821 (1951).

Miss Revere is clearly entitled to avail herself of the provisions of Code § 8-286. It is proper that a court of equity would recognize Miss Revere to enforce her rights as a legatee under the will of D. D. Jones. The executor of the estate of decedent is a party to the proceedings, and, while it is not prosecuting the claim of the appellee, she does not thereby lose the benefit of the provisions of the statute which requires corroboration; for this is, in effect, a proceeding against the estate of D. D. Jones and its executor. R. W. Jones and T. H. Jones are claiming money which they allege that their father put in his own pocket or credited to his own account. They are alleging illegal and improper withdrawals from their capital accounts in the partnership made by their father without explanation. These charges, if sustained, will operate to minimize the decedent's estate.

The issue which is dispositive of the case is whether or not the testimony of the two sons lacks the corroboration required by Code § 8-286.

Pertinent to such corroboration, we quote again from Mr. Chief Justice Eggleston's opinion in *Nicholson* v. *Shockey, supra,* as follows:

> "Whether or not corroboration exists and the degree and quality required are to be determined by the facts and circumstances of the particular case. *Trevillian* v. *Bullock*, 185 Va. 958, 963, 40 S. E. (2d) 920, 922; *Leckie* v. *Lynchburg Trust, etc., Bank*, 191 Va. 360, 370, 60 S. E. (2d) 923, 928.

> "Where, as here, a confidential relation existed between the parties at the time of the transaction relied on, a higher degree of corroboration is required that in ordinary·transactions.

\* \* \*

"It is argued on behalf of Harry A. Shockey that evidence of the close relationship existing between him and his mother and of her particular affection for him is sufficient corroboration to validate the gift. If this amounts to any corroboration at all, it is very slight. Indeed, as we have seen, the close and confidential relationship of the parties emphasizes the necessity of subjecting the transaction to a close scrutiny and of requiring more than ordinary corroboration." 192 Va. 270, 283, 284, 64 S. E. 2d 813, 821.

And again, in *Haynes, Executrix* v. *Glenn*, 197 Va. 746, 752, 91 S. E. 2d 433, 437 (1956), this court, in commenting on Code § 8-286, observed:

"One of the purposes of the statute is to prevent a surviving party from having the benefit of his own testimony where, by reason of the death of his adversary, the latter's personal representative is deprived of the decedent's version of the transaction. 58 Am. Jur., Witnesses, § 215, p. 147."

Appellants contend that the evidence clearly established that the sons had no knowledge of the contents of the books of the partnership, and challenge the holding of the trial court that they were chargeable with knowledge of the improper entries which estop them from correcting the records. They say that, at the most, there is a presumption that the sons had knowledge of the partnership books, and that this presumption was amply rebutted by uncontradicted evidence.

The question here is not so much whether the evidence is uncontradicted, but whether the evidence regarding the alleged improper entries and charges is corroborated.

The evidence of the accountant, Winquist, concerned only the entries in the books of the partnership as he found them upon audit. He knows nothing of the propriety of these entries, or of the reasons for the charges to the capital accounts of the two sons, and the withdrawals by D. D. Jones.

Miss Revere, the bookkeeper, had no explanation for the entries other than the quoted observation of D. D. Jones which does not corroborate the testimony of the sons.

The checks offer no corroboration for they simply reflect what the books of the partnership show, and what is not in dispute—that cer-

tain withdrawals were made by D. D. Jones and corresponding charges were made against the accounts of his sons.

Lacking here is any evidence showing why the charges to the capital accounts of the sons or the disposition of the money that was withdrawn. The reason this testimony is absent is the death of the father who made the withdrawals, and who directed the entries on the books.

The sons of D. D. Jones say that they did not get the money and had no knowledge of the withdrawals. All we have is the uncorroborated statement of each. Their testimony must be considered in light of the close family relationship that existed, the related family business enterprises, the generosity of the father, and their personal and financial dealings.

Certainly there is nothing in the relationship between the parties that would suggest any surreptitious, furtive, illegal and wrongful manipulation of the books of the partnership by D. D. Jones. He was in complete control of all the family enterprises. Both sons were in his employ, and their salaries, bonuses, gratuities and allowances were under his control.

The controversial charges made to the respective capital accounts of the sons and the corresponding withdrawals by the father were made over a period of from six to nine years prior to his death. In 1955 when the capital account of Thomas H. Jones was charged with $1500, the father gave this son a one-third interest in the D. D. Jones Transfer and Warehouse Company from which business this son earns a good salary and receives bonuses. In 1964 when the $3000 charge was made to Robert W. Jones, the father gave this son $25,000 in cash, and he admits receiving other monies from his father, as well as purchasing clothes which he charged to his father. The will of the decedent made liberal provisions for both sons.

The evidence shows a close relationship between the service station and the warehouse operation, with the same bookkeeper working for each. Apparently the warehouse corporation was the best customer of the service station. The information in the annual audits of the service station was the basis for entries made on the personal income tax returns of the two sons.

The partnership agreement itself has a provision that neither partner should do certain things without the consent of the other partners, including the use of credit or property for other than partnership purposes. The charges to the capital accounts of the sons could

have been with their express or implied consent. They could have involved the gifts to them of money, stock, clothing and other things of value. They could have had tax implications or been related to the operation of the warehouse corporation, which was the larger concern owned by Mr. Jones, and employing the sons. Manifestly the person in the best position to give the explanation was the decedent.

There is evidence in the record regarding three additional items shown on the books as charged to the account of T. H. Jones and credited to D. D. Jones in 1955, in the amounts of $305.75, $82.46 and $544.56. It appears unusual for these varying amounts, not in round numbers, to be the subject of a book entry without an obvious and specific reason.

In *Brooks* v. *Worthington*, 206 Va. 352, 357, 143 S. E. 2d 841, 845 (1965), where the extent of corroboration necessary to comply with Code § 8-286 was under consideration, we said:

> "In considering whether the testimony of an adverse or interested party has been corroborated pursuant to the requirement of the statute, it is not possible to formulate any hard and fast rule, and each case must be decided upon its own facts and circumstances. [Citing cases.]"

Upon a consideration of the facts and circumstances in the instant case, we conclude that the testimony of R. W. and T. H. Jones lacks the corroboratioin required by Code § 8-286, and accordingly the decree of the trial court is

*Affirmed.*

GORDON, J., dissenting.

The majority overlooks what was proved and what was not proved in this case.

The partnership books of Circle Service Station showed that before the transactions in question, D. D. Jones and his two sons each owned a one-third interest in the partnership. The books also showed that D. D. Jones withdrew partnership funds totaling $10,932.77 and charged the sons' capital accounts with those withdrawals. As a result of those transactions, the sons' interests in the partnership were diluted.

The verity imported by the partnership books is that D. D. Jones withdrew funds and charged them to his sons' capital accounts, not

that he had the right to make such withdrawals. That being so, Miss Revere had the burden of proving that D. D. Jones had the right to charge his sons for the sums he withdrew.

Miss Revere did not prove that D. D. Jones had the right to charge his sons for the sums he withdrew. She merely testified that D. D. Jones had said this "was about the only way he would ever get the money that he had advanced the boys".

The sons testified that they had not received any of the funds withdrawn by their father and charged to their accounts. By a boot-strapping operation, the majority decides the case in Miss Revere's favor by ignoring the sons' testimony on the ground that it was not corroborated. But with or without their testimony, Miss Revere did not bear her burden of proving that D. D. Jones had the right to charge his sons' accounts for the sums he withdrew. So whether or not the sons' testimony was corroborated is quite beside the point. *Ballard* v. *Cox*, 191 Va. 654, 663, 62 S.E.2d 1, 5 (1950).

If the holding in this case were limited to the case of ungrateful sons, perhaps no great harm would be done. But under this holding surviving partners will be precluded from challenging entries made by a deceased partner, unless their testimony is corroborated, even though those entries are *prima facie* improper.

EGGLESTON, C.J., and CARRICO, J., join in dissent.