## Richmond

IDA HARRIS HACKETT v. JOHN M. EMMETT, JR.

April 28, 1975.

Record No. 740596.

Present, All the Justices.

*Erwin S. Solomon; William A. Parks, Jr. (Erwin S. Solomon & Associates*, on brief), for plaintiff in error.

*George J. Kostel (Kostel, Watson, Carson & Snyder*, on brief), for defendant in error.

Harrison, J., delivered the opinion of the court.

John M. Emmett, Jr. filed a motion for a declaratory judgment that he is vested with title in fee simple to certain property in Bath County, Virginia, allegedly conveyed to him by deed of Anna Bell Harris, dated January 15, 1970. Ida Harris

Hackett responded that she is the owner of the land, having acquired title thereto by will of her sister, Anna Bell Harris, probated January 19, 1973. The trial court gave judgment in favor of Emmett, and Hackett appealed.

The sole issue is whether there is sufficient corroborative evidence of the *inter vivos* delivery of the deed from Harris to Emmett to satisfy the requirements of Code § 8-286. There is no question of fraud, undue influence or incompetency involved.

Dr. J. M. Emmett died on December 26, 1969, and by codicil to his will devised the cottage property involved here, located in Bath County, to Harris. Appellee, son of Dr. Emmett, in describing the relationship between his family and Harris, said: "Anna Bell Harris worked for my mother and father for in excess of forty-five years prior to my father's death. She lived in the same house with us. She was there when I was born. And she was like a mother to me." Following his graduation from college, Emmet was employed by the C. & O. Railroad, and, although he no longer lived in Clifton Forge, he returned home frequently until the time of his father's death, and once or twice a year thereafter.

On December 30, 1969, John E. Campbell, Vice President and Trust Officer of the United Virginia Bank, went to Clifton Forge to probate Dr. Emmett's will. Campbell arrived at the Emmett family home while the family was having breakfast, and he heard a discussion about the codicil to the will. Campbell testified that during the conversation "Anna Bell made a statement, generally: 'It doesn't make no difference; it's all going to Moe anyhow' ". The record shows that Moe is Emmett's nickname.

Emmett testified that "[s]oon after Anna Bell found that the property had been given to her by my father, she made it very plain to me that she wanted me to have the property, but she would like to retain it for her life". He said that Harris did not know then that Emmett's sister (Dr. Julia Edmunds) would buy the Emmett home place and that she would still have a home there, so "she wanted to have the right to have a place to go to live. And she asked me to arrange for this to be done, which I did". Following this conversation Emmett said he requested Hale Collins, an attorney, to prepare a deed from Harris to Emmett conveying him the cottage property, but reserving to Harris a life estate therein. He further testified that the deed

was prepared by Collins and "returned to my sister in Clifton Forge by mail, with a letter stating that this was the deed prepared for Anna Bell, and to have Anna Bell have it notarized — sign it and have it notarized. And this was done. And then it was mailed to me by my sister".

A copy of the deed dated January 15, 1970, was introduced in evidence. It was signed by Anna Bell Harris and was acknowledged by her on February 25, 1970, in the City of Clifton Forge before W. E. Leach, a notary public. The deed conveyed Emmett the cottage in question with the understanding that Harris "expressly reserves a life estate in the property herein conveyed".

At the time this occurred Emmett was residing in Columbus, Ohio, and the deed was mailed to him at his address in that city. He said he received the original deed from his sister, made a Xerox copy thereof, and then returned the original to Harris with a letter dated March 2, 1970, which reads: "Dear Anna Bell: Attached is deed for the camp. I have made a copy of this and will keep it on record. I am sending Mr. Collins a copy of this letter. You should contact him to find where and how this deed should be recorded. /s/ Moe." A copy of the letter was introduced in evidence and shows the following notation thereon to Collins: "Would you please contact Anna Bell and give her assistance in the method of recording this deed. /s/ J. M. Emmett."

When asked why he mailed the deed back to Harris instead of his sister, Emmett replied: "Well, the deed was Anna Bell's, and she had a life estate in it, and my sister is a doctor and I wouldn't ask her to do anything for me that Anna Bell could do." He said that Harris had been taking care of "things like this" for him all his life. Emmett apparently gave the transaction no further thought or attention. He said that he did not learn that Harris had not recorded the deed until after her death in April, 1973.

In addition to the property in controversy Harris also owned real estate in Staunton which she devised to appellant. Emmett testified repeatedly that the honesty and integrity of Anna Bell Harris were beyond question, and also that "[i]f Anna Bell changed her mind about the cottage and the camp, I believe honestly she would have told me that she had changed her mind". The notary who took the acknowledgment was shown the

Xerox copy of the deed from Anna Bell Harris to John M. Emmett, Jr. and testified that he recognized his writing, and that the deed was acknowledged by Anna Bell Harris before him.

The appellant introduced no evidence other than certain letters exchanged between the executor of Dr. Emmett's estate and Harris and her attorney. The letters concerned the taxes on the property; the fact that a deed from the executor of Dr. Emmett's estate to Harris was not necessary; and information that the bank had been unable to get a deed of correction executed to establish the exact line on one side of the property.

■ The sole error assigned by appellant is that Emmett failed to corroborate a delivery of the deed to him during the lifetime of Harris. We observe that the evidence is clear that the transaction is one of gift and not bargain and sale. No consideration was involved, other than a token payment of five dollars, and Emmett testified the property was a gift to him from Harris.

In *Enright* v. *Bannister*, 195 Va. 76, 80-81, 77 S. E. 2d 377, 380 (1953), the court said:

"It is generally agreed, however, that the law makes stronger presumptions in favor of delivery where a deed is a voluntary settlement than in an ordinary case of bargain and sale. [Citing authorities] But even in such cases some evidence of delivery cannot be wholly dispensed with. [Citing case]"

■ In *Brewer* v. *Brewer*, 199 Va. 753, 765, 102 S. E. 2d 303, 312 (1958), we held that where delivery of a deed was made, the passing of title is not affected, as between parties, by the fact that the deed was not recorded or that the deed was thereafter lost or destroyed. We further said:

"In determining whether there has been delivery of a deed of gift or voluntary settlement the courts will generally consider as potent factors, in connection with all the circumstances, the fact that the grantor stands in the relation of spouse or parent to the grantee, and has made statements to the effect that he intended to, and did, execute such a deed. . . ."

■ Anna Bell Harris is dead and her testimony is therefore not available. Code § 8-286 provides:

"In an action or suit by or against a person who, from any cause, is incapable of testifying, or by or against the

committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; and in any such action or suit, if such adverse party testifies, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence."

Hackett points to numerous prior decisions of this court on the issue of the corroboration necessary to support an adverse or interested party's testimony where Code § 8-286 is applicable. The principles which control were summarized by us in *Brooks* v. *Worthington*, 206 Va. 352, 357, 143 S. E. 2d 841, 845 (1965), as follows:

"In considering whether the testimony of an adverse or interested party has been corroborated pursuant to the requirement of the statute, it is not possible to formulate any hard and fast rule, and each case must be decided upon its own facts and circumstances. . . .

"It is not necessary that the corroborative evidence should of itself be sufficient to support a verdict, for then there would be no need for the adverse or interested party's testimony to be corroborated. . . . 'Confirmation is not necessary for that removes all doubt, while corroboration only gives more strength than was had before.' . . .

" 'Corroborating evidence is such evidence as tends to confirm and strengthen the testimony of the witness sought to be corroborated — that is, such as tends to show the truth, or the probability of its truth.' . . . Such evidence need not emanate from other witnesses but may be furnished by surrounding circumstances adequately established. . . . Nor is it essential that an adverse or interested party's testimony be corroborated on all material points. . . ."

*See also Whitmer* v. *Marcum*, 214 Va. 64, 196 S. E. 2d 907 (1973), and *Seaboard Bank* v. *Revere*, 209 Va. 684, 166 S. E. 2d 258 (1969).

The facts and circumstances of this case produce a belief and confidence in the truth of the testimony of Emmett. There was unquestionably a close and affectionate relationship between Harris and the Emmett family, with whom she had lived most of her adult life. Harris bore an affection for Emmett and had ample reason and motive for conveying him the property devised her by his father. Emmett's testimony of Harris' desire that he have the property was corroborated by that of Campbell.

Harris fulfilled her expressed wish by executing a valid deed conveying Emmett the property. The execution of this deed and her acknowledgment thereof, were corroborated by the notary, Leach.

The decedent then effected a delivery of the deed by having Emmett's sister mail it to him at his address in Columbus, Ohio. Emmett testified that the deed was received by him in due course. His testimony of the fact of delivery and receipt of the deed is corroborated by his possession of a Xerox copy of a signed and acknowledged original. It was from this copy that Leach attested the fact of the acknowledgment by Harris of the deed.

The trial court heard the evidence *ore tenus* and found as a fact that Emmett's testimony was corroborated in accordance with the requirements of Code § 8-286. The evidence supports this finding. Accordingly, the judgment is

*Affirmed.*